(Decided November 16th, 1898.)

---

# CHARLES AUGUST FLACH *vs.* THE GOTTSCHALK COMPANY OF BALTIMORE CITY.

*Contracts of Lunatics— When Enforceable— Competency of Witness—Admission of Evidence subject to Exception.*

The contracts of a lunatic who has not been found by an inquisition to be insane, are not void but voidable.

The contract of a lunatic not so found upon inquisition, made with a person not aware of his lunacy, is binding upon him, when the lunatic has had the benefit of the consideration and the contract is fair and the parties cannot upon rescission be placed in *statu quo*.

An inquisition of lunacy is notice, actual or constructive, to all parties dealing with the lunatic, and the contract of a person adjudged to be insane cannot be enforced against him.

Code, Art. 35, sec. 2, provides that one party to a contract is incompetent to testify if the other party thereto be dead or insane. *Held,* that where the contract is made between the agent of a corporation and the person subsequently adjudged to be insane, such agent is competent to testify in an action on the contract, because the other party to the contract is the corporation and not the agent.

The action of the trial Court in admitting evidence subject to exception, cannot be reviewed on appeal, unless the party objecting to the evidence afterwards moves that it be excluded, and takes an exception to the denial of such motion.

Appeal from the Superior Court of Baltimore City (DENNIS, J.), where the case was tried without a jury.

The cause was submitted to the Full Bench on briefs.

*Benjamin F. Horwitz* and *Roderick D. Coe* for the appellant, cited: *Riley* v. *Carter,* 76 Md. 594; *Evans* v. *Horan,* 52 Md. 609; *Key's Lessee* v. *Davis,* 1 Md. 43; *Brawner* v. *Franklin,* 4 Gill 468; *Chew* v. *Bank,* 14 Md. 318; *Burke* v. *Allen,* 29 Foster 114; *Leach* v. *Marsh,* 4 Me. 552; *Rea* v. *Bishop,* 59 N. W. Rep. 555; *Chandler* v. *Simmons,* 97 Mass. 508; *Seaver* v. *Phelps,* 11 Pick. 304.

*Martin Lehmayer,* for the appellee cited: *Wilder* v. *Weakeley,* 34 Ind. 181; *Beals* v. *See,* 10 Pa. St. 56; *Lancaster Co. Nat. Bk.* v. *Moore,* 78 Pa. St. 407; *Mutual Life Ins. Co.* v. *Hunt,* 79 N. Y. 541; *Matthiessen* v. *McMahon,* 38 N. J. L. 536; *Lincoln* v. *Buckmaster,* 32 Vt. 652; *Young* v. *Stevens,* 48 N. H. 133; *Odom* v. *Riddick,* 104 N. C. 515; *Fay* v. *Burditt,* 81 Ind. 433; *Abbott* v. *Creal,* 56 Iowa 175; *Meyers* v. *Knabe,* 51 Kansas 720; *Riley* v. *Albany Savings Bk.,* 36 Hun. (N. Y.) 513, 519; *Ingraham* v. *Baldwin,* 9 N. Y. 45; *Gribben, Guardian* v.

*Maxwell,* 34 Kansas 8; *Burnham* v. *Kidwell,* 113 Ill. 425; *Schaps* v. *Lehner,* 55 N. W. (Minn.) 911; *Scanlon* v. *Cobb,* 85 Ill. 296; *Northwestern Fire Ins. Co.* v. *Blankenship,* 94 Ind. 535; *Riggan* v. *Green,* 80 N. C. 236; *Molton* v. *Camroux,* 2 Exch. 489; *Same case,* 4 Exch. 17, and *Holser* v. *Beard,* 54 Ohio St. 398; *Fay* v. *Burditt,* 81 Ind. 433.

McSHERRY, C. J., delivered the opinion of the Court.

There are two questions brought up by the record in this case—the one as to the sufficiency of a replication to which the appellant demurred, and the other as to the admissibility of evidence. The replication raises the question as to a lunatic's liability on his contract, and that particular question *as now presented* has not hitherto been distinctly considered and settled in Maryland.

The suit was brought in April, eighteen hundred and ninety-six by the appellee against the appellant to recover the price of two barrels of whiskey sold by the former to the latter in 1894. The appellant was adjudged a lunatic in May 1896. The declaration contains the ordinary money counts. In addition to the general issue plea, the defendant pleaded that at the time the purchase was made he was and ever since has been a lunatic. To this plea the plaintiff replied first, with a traverse, and secondly, by a replication alleging that the merchandise sued for had been sold and delivered for its fair value and had been sold and delivered when the plaintiff was unaware of the lunacy of the defendant; that the contract sued on was fair and reasonable, that the defendant had the benefit thereof and that the parties cannot now be placed in the same situation they occupied before the goods were sold and delivered. This replication was demurred to; the demurrer was overruled and issue was finally joined. The first error complained of is this ruling on the demurrer.

Speaking generally, the contracts of a lunatic, who has not been found by an inquisition to be insane, do not belong to the class that are absolutely void, but fall within the group that is described as voidable. This is

certainly the law in Maryland. *Key v. Davis*, 1 Md. 32;
*Chew v. Bank of Baltimore*, 14 Md. 319; *Riley & Carter
v. Aiken*, 76 Md. 595. Whilst his contracts, with some
exceptions, are only voidable, it does not follow that
they can always and under any circumstances be avoided
and annulled by him. There are conditions which
fasten upon him the obligation of some of his contracts
as completely as though they were the undertakings of a
perfectly sane individual. At a very early date—as long
ago as the time of Littleton—it was apparently the pre-
vailing doctrine that " no man of full age shall be re-
ceived in any plea by the law to stultify and disable his
own person." *Litt.* s. 405. And so in *Beverley's case*,
4 Co. Rep. 123, the Court of Kings Bench held " that
every deed, feoffment or grant which any man *non com-
pos mentis* makes, is avoidable, and yet shall not be
avoided by himself, because it is a maxim in law that
no man of full age shall be in any plea to be pleaded by
him, received by the law to stultify himself." As a con-
sequence, though the Crown in some cases could, and
in other cases persons who claimed under a lunatic might
set up his disability, the individual himself was not per-
mitted to do so. But this rule was subsequently relaxed
and, in fact, the directly opposite position was assumed.
Thus, the old writ of *Dum fuit non compos mentis* lay to
recover back land which had been aliened by a person
not in his right mind. *Fitz. Nat. Brev.*, 202; and it was
held that a lunatic could not suffer a recovery. *Hume
v. Burton*, 1 Ridg. Par. Cas. 16; nor execute a deed.
*Yates v. Boen*, 2 Strange 1104; nor a bond, *Faulder v.
Silk*, 3 Camp. 126; nor indorse a bill of exchange,
*Alcock v. Alcock*, 3 M. & Gr. 268. And so it was held
that a family settlement made by a lunatic ought to be
set aside, although it was reasonable and for the conven-
ience of the family. *Clerk v. Clerk*, 2 Vern. 312. SIR
W. SCOTT in *Turner v. Meyers*, 1 Hagg. C. R. 414,
stated: " It is, I conceive, perfectly clear in law that
a party may come forward to maintain his own past in-
capacity; and also that a defect of incapacity invalidates
the contract of marriage as well as any other contract."

This broad rule which supplanted the ancient contrary doctrine was itself afterwards qualified and restricted, and certain exceptions were engrafted on it. Thus a fine levied by a person *non compos mentis* was held to be good, *Thompson* v. *Leech*, 3 Mod. 305, and the reason was that the act is of a public and notorious character, done in a Court of record, and that the Court had the power of judging of the sanity of the party. And so a feoffment by a lunatic, *Thompson* v. *Leech*, Carth. 435. Another exception—if exception it can be called, because it depends upon a wholly different principle—arises where necessaries are supplied to a lunatic; and these are excepted from the general rule on the ground that they do not require a consenting mind. But the qualification of the rule did not stop with these three exceptions, for POLLOCK, C. B., in *Molton* v. *Camroux*, 2 Exch. 487, affirmed in 4 Exch. 17, observed that unsoundness of mind would now be a good defence to an action upon a contract if it could be shown that the defendant was not of capacity to contract " *and the plaintiff knew it.*" In support of this view the Chief Baron cited *Browne* v. *Joddrell*, 1 Mood. & M. 105; *Baxter* v. *Earl of Portsmouth*, 5 B. & C. 170; *Dane* v. *Viscountess Kirknall*, 8 C. & P. 679. In *Beavan* v. *McDonnell*, 9 Exch. 309, it appeared that the plaintiff entered into a written contract for the purchase of certain land at a specified price from certain persons, vendors thereof on behalf of the defendant, on the terms and conditions that the plaintiff should pay a sum of £415 as a deposit on the purchase, etc., and that if the plaintiff should neglect to comply with the conditions on his part the deposit should be forfeited to the vendors. The plaintiff paid the deposit. At the time he entered into the contract the plaintiff was a lunatic and incapable of understanding its nature; but this the defendant did not know, and the contract was on his part a *bona fide* one. The lunatic sued to recover back the deposit. The defendant by plea alleged that the money had been received under the contract; and the plaintiff replied that when the contract was made and the money was paid under it, he was a lunatic and incapable

of contracting, and that the contract was not of any
benefit to him; and he averred that the defendant had
notice of this.   The defendant rejoined that neither the
vendors nor the defendant when the plaintiff made the
contract or paid the money " knew that he was a lunatic,
or of unsound mind and incapable by reason of unsound-
ness of understanding the meaning of a contract, but
made the said contract with him fairly and in good faith,
believing that he was able to understand the same."
This rejoinder was demurred to but was held to be a
good rejoinder.   The question—and the precise ques-
tion—involved in the case at bar, was thus decided ad-
versely to the lunatic in *Beavan* v. *McDonnell*.   In *Elliot*
v. *Ince*, 4 De G. M. & G. 475, Lord Chancellor
Cranworth spoke of the decision in *Molton* v. *Camroux*,
2 Exch. 487, as a decision of necessity, and he observed
that a contrary doctrine would render all ordinary deal-
ings between man and man unsafe.   " How is a shop-
keeper," asked his Lordship, " who sells his goods, to
know whether a customer is or not of sound mind?
Perhaps," he continued, " the same principle may apply
to sales of land or mortgages.   Lord Truro seems to
have thought it would: so at least I collect from what
he says in *Price* v. *Berrington*," 3 M. & G. 498.   And the
more recent case of the *Imp. Loan Co.* v. *Stone*, 1 Q. B.
(1892) 599, is equally emphatic.   Sir Frederick Pollock
in his valuable work on Contracts, 6th Edition, page 89,
states that " The rule is now settled, however, that the
contract of a lunatic or drunken man, who by reason of
lunacy or drunkenness is not capable of understanding
its terms or forming a rational judgment of its effects
on his interests, ·is not void but only voidable at his
option; *and this only if his state is known to the other
party.*"   Not only is this the settled and accepted law
of England, but the same principle may be regarded as
prevailing in this country.   *11 Am. & Eng. Ency.-Law*,
136.

If the contract be fair and *bona fide*, and there is no
element of fraud or imposition in it, and if the other
party does not know of the insanity and the parties can-

not be placed in the position they occupied before the contract was executed by the sane party, there is no reason why the lunatic should be allowed to retain what he has acquired under the contract and at the same time be permitted to escape from all liability arising out of it. Though the question now before us was not involved in *Chew & Goldsborough* v. *The Bank of Balto.*, 14 Md. 319, this Court in dealing with that case recognized the principle which must control this; for on the page just mentioned the Court says: "There are cases where the Courts have declined to interfere. In these, however, as far as we have examined, the lunatic had had the benefit of the contract, and relief was refused, because of lapse of time, the changed condition of the property or other circumstances, *and especially where the party appeared to be sane.*"

Whatever may have been the reasons which induced the Courts to hold that a contract made under the conditions set forth in the replication to which the defendant demurred was binding, the effect has been to restore the original doctrine fixing a liability upon the lunatic when there has been, at the time the contract was made, no judicial ascertainment of his lunacy and when the contract is fair and *bona fide,* unless the other party to the contract knew at the time it was entered into that the lunacy existed. The liability of the lunatic under these circumstances rests not only on authority but upon sound and satisfactory principles.

As the lunatic's contract at best is only voidable it would be unjust and inequitable to allow him to repudiate it if it had been made fairly and in good faith when the other party was ignorant of the disability, unless both parties upon a recission of it can be restored to the situation they originally occupied. A successful repudiation of such a contract would inflict injury upon an innocent person who had been guilty of no default, whilst the lunatic would reap the benefit accruing under the contract. If it be assumed that both parties to such a contract are equally innocent—and that is the legal signification of the replication now under consideration—

then the familiar rule that when loss must fall on one or the other of them, it must be borne by the one who occasioned it, has a direct application; and the lunatic who causes the loss must be made to bear the consequences of his infirmity as he must bear his misfortune. The concession of the demurrer is that the contract was a fair one; that it was *bona fide*; that the goods sold were delivered to the defendant; that he had the benefit of the contract; that it was made in ignorance of the appellant's mental disability and that the parties cannot be placed in the situation they occupied before the contract was made and executed on the part of the appellee. Obviously, then, if a merely voidable contract can be repudiated by one of the parties even though he be a lunatic, and a recovery can be defeated in the face of these circumstances simply because the party who made the purchase was of unsound mind, though not at the time adjudged to be so, the loss would fall upon a confessedly innocent person, instead of on the one who received and used the articles delivered in good faith under the contract. This would be manifestly inequitable. The principle which holds the lunatic liable under these conditions has long been acted on in Equity. *Neill* v. *Morley*, 9 Ves. 478; 3 *Pom. Eq.*, sec. 946; *Price* v. *Berrington*, 3 Mac. & G. 486. It has also been said that such a contract is enforced against the party *non compos mentis*, not so much upon the idea that it possesses the legal essential of consent, but rather because, by means of an apparent contract, he has secured an advantage or benefit, which cannot be restored to the other party, and therefore it would be inequitable to permit him, or those in privity with him, to repudiate it. *Memphis Nat. Bank* v. *Neely*, 97 Tenn. 120; 34 L. R. A. 274; *Lincoln* v. *Buckmaster*, 32 Vermont 652; *Matthiessen* v. *McMahon*, 38 N. J. L. 536.

Of course, if such a contract were absolutely and unconditionally void the ignorance of the other party as to the lunacy could not convert the disability into an ability—could not make that valid which was wholly invalid. But if the contract be only voidable it would

be palpably unjust to allow the lunatic to reap the benefit derived under it, and then to avoid all liability, to the prejudice of the other no less innocent party. There are, undoubtedly, cases which hold the contrary view, but the precise question now involved has never been ruled in Maryland before. The inconvenience which it is supposed may result from this doctrine can easily be averted by a formal inquisition of lunacy. Such an inquisition would furnish notice—actual in some instances, constructive in others, but in both a sufficient notice—of the lunacy; and this would preclude an averment that the party dealing with the lunatic was ignorant of the latter's mental incapacity. Whilst it is true as insisted by the appellant that this Court in *Chew & Goldsborough* v. *The Bank, supra*, declined to adopt that line of English cases which hold a lunatic liable on his contracts unless fraud or imposition had been practiced; still in the very same case of *Chew & Goldsborough* it was conceded in the opinion that the Courts in other cases had refused to interfere where the lunatic had had the benefit of the contract and " especially where the party appeared to be sane." The decision striking down the transfer of bank stock was founded on the distinct ground that those considerations did not apply. " The case does not show that Chew received one cent for the stock," though the stock belonged to him. It was not a case where the lunatic obtained any benefit from the transaction or where the officers of the bank could or did contend that Chew appeared to be sane, for they neither saw nor dealt with him at all. (Page 319.)

We hold then, for the reasons we have given that there was no error in the ruling on the demurrer.

The exception presenting the other question—the admissibility of certain evidence—sets forth that the plaintiff, a body corporate, produced as a witness Max Honig, who proved that he was a director and stockholder of the plaintiff company as well as a salesman therefor. Thereupon the defendant objected to the competency of the witness because the defendant—the other party to the contract was insane. The Court admitted the

evidence subject to exception.   No motion was made afterwards to exclude the testimony, but an exception was reserved.   The objection to the competency of the witness is founded on sec. 2, Art. 35 of the Code. Amongst other things that section declares one party to a contract or cause of action incompetent to testify if the other party thereto be a lunatic or insane.   There are two grounds upon which the ruling caṇ be sustained. First:   It is quite clear that the incapacity to testify imposed by the statute is imposed upon the *sane party,* to the contract or cause of action.   If one of the *parties* to the contract or the cause of action be insane then the other *party* to that contract or cause of action shall not be allowed to testify.   But Max Honig was not a party to the contract or cause of action.   The parties to the contract were the corporation and the appellant.   Honig was the salesman.   The precise question has been settled by this Court in *South Balto. Co.* v. *Muhlbach,* 69 Md. 395; the situation of the parties being reversed.   In that case the contract was made by the plaintiff with a director and agent of the company.   The director died and it was objected that the plaintiff was, in consequence, incompetent to give testimony.   It was there held: " The rule of exclusion would, of course, have to be mutual in its operation, if the objection of the defendant were maintainable, and as nearly all contracts by corporations or associations are made by agents, if the death of the other contracting party rendered the agent incompetent as a witness, a great many persons would be rendered incompetent who were competent, or who could have been made competent, before the passage of the Evidence Acts.   Such a result would contravene both the letter and the spirit of the Acts which were intended to extend and in no manner to restrict the competency of persons to testify."   See *City Bank of Balto.* v. *Bateman,* 7 H. & J. 104.   Secondly: The evidence of Honig was admitted subject to exception.   There was, therefore, no definite or final decision by the trial Court as to the admissibility of the evidence.   This course is frequently adopted to facilitate trials and to enable the

Court more fully to understand than it is possible to do at the moment, the bearing of the evidence upon the issues.   But admitting evidence subject to exception is not a ruling that can be brought up by bill of exception or in any other way.   The evidence is merely admitted conditionally.   The objecting party is at liberty to move later on that it be excluded, and from a refusal by the Court to grant such a motion an exception will lie. This is the settled practice.   *Basshor* v. *Forbes*, 36 Md. 164.

There being no errors in the rulings excepted to, the judgment which was in favor of the plaintiff, will be affirmed.

> *Judgment affirmed with costs above and below.*

(Decided November 16th, 1898.)