[No. 1834]

J. B. MENARDI, Respondent, v. WILLIAM WACKER and J. D. SNYDE, Partners Doing Business Under the Firm Name of Wacker & Company, Appellants.

1. Trial—Objections to Evidence—Necessity of Motions to Strike.
    Where the admissibility of evidence admitted subject to objection is to be decided later on a motion to strike, and no motion is made, the objection is waived.

2. Appeal and Error—Review—Harmless Error.
    The admission of improper evidence of a fact established by other evidence, admitted without objection, is not prejudicial.

3. Corporations—Pledge of Stock—Unauthorized Pledge—Bona Fide Purchases.
    One who buys stock with the money of his employers, without their knowledge or consent, holds possession as an employee only and cannot pledge it for his own debt so as to defeat the employers' right to recover it from the pledgee.

4. Gaming—Pledge to Secure Gambling Debt.
    A pledge of stock to secure a note given in payment of a gambling debt is void.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Washoe County; *W. H. A. Pike*, Judge.

Action by J. B. Menardi against William Wacker and another.    From a judgment for plaintiff, defendants appeal.
**Affirmed.**

The facts sufficiently appear in the opinion.

*James T. Boyd* and *A. N. Salisbury*, for Appellant:

I.    Certificates of stock have uniformly been held in all of the late cases to be quasi-negotiable and hence a delivery with an endorsement in blank has always been held to be good. In the case at bar, there was nothing on or in or about the

stocks to indicate any interest or any right to the stock to be vested in W. L. Cox & Co., the stocks having been originally issued to H. G. Humphry and Charles E. Hudson, so that the legal title to all of that stock was vested in Humphry and Hudson, with the equity in the purchaser and holder of the stock. Under the terms of the certificate the legal title could only be transferred on the books of the company. (See transcript, pages 58, 59, and 60.)

II.     Under all of the evidence of this case it is plainly apparent that W. L. Cox & Co. were never the owners of the stock, nor did Marsh ever take that stock from the possession of W. L. Cox & Co. The action here brought is one for the recovery of stock belonging to W. L. Cox & Co., and taken from their possession by Mr. Marsh, while the evidence shows that Marsh wrongfully and unlawfully appropriated money belonging to W. L. Cox & Co., and purchased this stock.

*Cheney, Massey & Price*, for Respondent.

By the Court, Sweeney, J.:

This action was commenced in the Second Judicial District Court, at Reno, Nevada, on May 2, 1907, for the recovery of 200 specified shares of stock of the Goldfield Consolidated Mines Company, and 100 shares of Goldfield Combination Fraction Mining Company stock, and, in case the return of the specified stock could not be had, for the recovery of the value of the stock and $500 damages for the wrongful taking and conversion of the said stock. The cause was tried on the 30th day of September, 1908, before the court, without a jury, and on the 2d day of November, 1908, the court rendered its judgment directing the return of the stock to the plaintiff, and, in case the stock could not be had, then judgment in the sum of $1,270, the value of the stock.

The testimony in this cause shows: That at the time alleged in the complaint W. L. Cox & Co. were engaged in a stock brokerage business in Reno, the firm consisting of W. L. Cox, J. B. Menardi, Claude Smith, and Joe J. Kerrick. A. C. Marsh was the cashier and manager of said company, and with the firm's money bought the stock in question and charged it

upon the books of the company to the "stock" account of said company, and distinguished from the "customers'" account, wherein the stock purchased for customers was charged. That the defendants were running a saloon and gambling house in Reno, and that between 11 and half past 1 o'clock on the evening of March 16, 1907, Marsh, who was drinking and gambling, and known to be in the employ of the company by the defendant Wacker, from time to time, during the time mentioned, secured from defendant Wacker on his checks the amount of $2,000. That Marsh wanted to gamble more; but the defendant stopped him. On the following morning, Marsh sent word to Wacker, by telephone, not to present his check, that he desired to fix the matter up. That Marsh told the defendant Wacker that he did not want him to come to the Cox & Co.'s place of business, and he did not wish to go to defendant's saloon, but wanted to meet him elsewhere. They designated Pollard's rooms in a lodging house as a meeting place, and there Marsh gave Wacker his ninety-day note for the money and deposited the stock in question, which belonged to W. L. Cox & Co., and which Marsh got from the company as security for the note.

Upon the return of Captain Cox, who was absent in the east at the time, after an examination of the books, and after ascertaining Marsh's irregularities, and the facts of the transaction from Marsh, he thereupon demanded the return of the stock from defendants, which was refused. The testimony further shows that W. L. Cox & Co. never disposed of any of said stock certificates, nor authorized any one to dispose of them for or on behalf of their account. Following the well-established principle of law that a person has the right to follow, sue for, and recover his property, wheresoever it may go or wheresoever it may be found, the lower court rightfully awarded judgment to the plaintiff.

In the amended complaint, plaintiff, after alleging that plaintiff's assignors and predecessors in interest were the owners of and entitled to the possession of the certificates of stock in question, alleged that the defendants wrongfully and unlawfully took possession of said personal property and deprived plaintiff's predecessor and assignor in interest of its

possession. The answer of the defendants denied all the material allegations of the complaint. Plaintiff's assignments of error, which go to the insufficiency of the evidence to support the findings of the lower court, before whom the case was tried without a jury, will not be disturbed, for the reason that an examination of the evidence discloses that the evidence was sufficient.

During the trial the objections made to questions asked Captain Cox concerning the ownership of the stock and affairs of the company, which is the main testimony against which the objections were taken, was agreed to be taken subject to objection, and the question of its admissibility determined later on a motion to strike out. The record discloses that no motion to strike out was ever made to the testimony taken subject to the objection and agreement. It is well established that evidence introduced subject to objection and the question of its admissibility witheld until further proof is made, if the objecting party does not move at the proper time to have the testimony stricken from the record, he waives his objection, and the exceptions to its admissibility cannot be considered on appeal. As the Court of Appeals of Maryland, in passing upon this rule, has well and tersely said: "The evidence of Honig was admitted subject to exception. There was therefore no definite or final decision by the trial court as to the admissibility of the evidence. This course is frequently adopted to facilitate trials, and to enable the court more fully to understand than it is possible to do at the moment the bearing of the evidence upon the issues; but admitting evidence subject to exception is not a ruling that can be brought up by bill of exception, or in any other way. The evidence is merely admitted conditionally. The objecting party is at liberty to move later on that it be excluded, and from a refusal by the court to grant such a motion an exception will lie. This is the settled practice." (*Flach* v. *Gottschalk Co.*, 88 Md. 368, 377, 41 Atl. 908, 911, 42 L. R. A. 745, 71 Am. St. Rep. 418; *Naas* v. *Wolter*, 92 Minn. 404, 100 N. W. 211; *Breitkreutz* v. *Nat. Bk.*, 70 Kan. 698, 79 Pac. 666; *Knickerbocker Ice Co.* v. *Gardiner Dairy Co.* 107 Md. 556, 69 Atl. 406, 411, 16 L. R. A. (N. S.) 746; *King* v. *Haney*, 46 Cal. 560, 13 Am. Rep. 217.) How-

ever, from an inspection of the record, the evidence was not prejudicial to the substantial rights of the defendant, because the documentary evidence introduced, as disclosed by the books of the company, taken together with the evidence of Cox pertaining thereto, and not objected to, substantiated the claims of plaintiff.

Appellant's contention that, because the stock in question was bought by Marsh with the money of Cox & Co., without their knowledge or consent, it thereby became Marsh's property, and, as Cox & Co. had no notice of the transaction until after the stock had been pledged to Wacker & Co., they had no interest in the stock until they ratified the transaction, is not well taken in law; because the stock was never delivered by Cox & Co. to Marsh, and he had no rightful personal possession of the stock, and he was not authorized to deliver or pledge the stock of Cox & Co. to any one. The only right Marsh had to the possession of the stock was as the employee of Cox & Co. In law his possession of the stock was the possession of the company. (*Hanson* v. *Chiatovich*, 13 Nev. 395; *Barstow* v. *Savage Min. Co.*, 64 Cal. 388, 1 Pac. 349, 49 Am. St. Rep. 705.)

Again, the defendants in this case cannot legally be considered pledgees or bona fide purchasers of the stock in dispute, for the reason that the stock was given to secure a gambling debt, and was therefore given for no valuable consideration and was void. A check given for a gambling debt is void under the law of this state, and, there being no valid obligation, there could be no lawful consideration for the security as a pledge. (*Burke* v. *Buck*, 31 Nev. 74.)

The judgment of the lower court is affirmed.

It is so ordered.