NATIONAL METAL EDGE BOX COMPANY *v.* JEAN J. VANDERVEER

ET AL.

Special Term at Brattleboro, February, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed March 20, 1912.

*Insane Persons—Contracts—Validity—Mortgages—Foreclosure.*

As a general rule, equity will not set aside the fair and reasonable executed contract of a lunatic, if made in the ordinary course of business on sufficient consideration, of which the lunatic has the benefit, and the parties cannot be placed in their former state, unless the mental condition of the lunatic was known to the other party, or he was chargeable with knowledge of it.

Where an insane person, but not then so adjudged, executed a real estate mortgage, in which h s wife joined, to take up a prior mortgage given by him to secure a part of the purchase price of the same premises, which was a prudent act necessary to protect his interest, and the mortgagee had neither actual nor constructive knowledge of the mortgagor's lunacy, in proceedings by the mortgagee to foreclose the mort-

gage, equity will hold it valid, decree its foreclosure, and deny the intervention of the daughter of the mortgagor claiming as creditor.

APPEAL IN CHANCERY, Bennington County, December Term, 1911, *Waterman*, Chancellor. Heard on the pleadings, master's report, and the petition of Dorothea A. Vanderveer, minor daughter of Jean J. Vanderveer, for leave to intervene as his creditor. Petition to intervene denied, and decree for the orator foreclosing the mortgage. The opinion states the case.

*O. E. Butterfield* and *Herbert G. Barber* for the orator.

The defence of lunacy is not here available, for the contract was made in the usual course of business, on sufficient consideration, was for the benefit of the lunatic, and without any knowledge, actual or constructive, on the part of the orator of the mental condition relied on. 2 Greenl. Ev. 369; 2 Kent. Com. 451; *Niell* v. *Morley*, 9 Ves. 478; *Serguson* v. *Leaky*, 2 Atk. 412; *Loomis* v. *Spencer*, 2 Page 153; 12 Pet. Abr. 267; 1 Fombl. Eq. 72; *Price* v. *Burrington*, 8 Eng. L. & Eq. 254; *Lincoln* v. *Buckmaster*, 32 Vt. 657; *Richardson* v. *Strong*, 13 Ired. (N. C.) 196; *Pearl* v. *McDowell*, 3 J. J. Marsh (Ky.) 658; *Skidmore* v. *Romaine*, 2 Bradf. (N. Y.) 122; *Ballard* v. *McKenna*, 4 Rich. (S. C.) 358; *Sims* v. *McClure*, 8 Rich. 286; *Dodds* v. *Wilson*, 1 Treadw. (S. C.) Const. 448.

*Chase & Daley* for the defendants.

The mortgage is void. The mortgagor was insane and wholly incapable of the requisite mental ability. *Gibson* v. *Soper*, 72 Mass. 279; *Brigham* v. *Fairweather et al.*, 144 Mass. 48; *Baker* v. *Stone*, 136 Mass. 405; *Valpey* v. *Rear*, 130 Mass. 384; *Chandler et al.* v. *Simmons*, 97 Mass. 508; *Price* v. *Furman*, 27 Vt. 268; *Person* v. *Chase*, 37 Vt. 647; 23 Am. & Eng. Enc. of Law, 467; *Calmes* v. *McCracken*, 8 S. C. 87; *Day* v. *Seeley, et al.*, 17 Vt. 542; *Stewart* v. *Flint*, 59 Vt. 144; 13 Cyc. 573-576; 27 Cyc. 1042; 22 Cyc. 1204; *Lazelle* v. *Pinnick*, 1 Tyl. 247; *Dotty* v. *Hubbard*, 55 Vt. 278; *Davis* v. *Cummings*, 60 Vt. 502; 2 Pom.

Eq. Jur. 947; *Dennett* v. *Dennett,* 44 N. H. 531; *Wilcox* v. *Voath,* 12 Conn. 550; *Mitchell* v. *Kingman,* 5 Gray 431.

ROWELL, C. J. This is a petition in chancery to foreclose a mortgage given to the petitioner by the defendant Jean J. Vandeveer and his wife the 15th of January, 1909, at which time he was insane and had been from and including July 16, 1908, and could not understand the nature and quality of his acts so as to comprehend the results that might flow from them. But he had not been adjudged insane, and was not till about a year and a half afterwards, when he was so adjudged and his wife appointed his guardian, and she is defending as such and as a signer of the mortgage, which was given to secure the money the petitioner paid at the special instance and request of Vanderveer to take up a mortgage on the same premises, given by Vanderveer the 16th of July, 1908, to secure a part of the purchase price of the premises, and which he was being pressed to pay.

The petitioner did not know, and the case shows nothing to charge it with knowing, that Vanderveer was insane when he gave it the note and mortgage, but on the contrary it is found by the master that the giving of them to the petitioner was a sane act, and a proper and prudent proceeding to take up the former mortgage, and was such a transaction as any man of sound judgment would be expected to do, and was necessary, to protect his interest in the property.

Such being the case, the decree of foreclosure appealed from is right, for when, as here, no inquisition nor adjudication of lunacy precedes the transaction, courts of equity do not, as a general rule, set aside the contracts of lunatics that have been executed, if made in the ordinary course of business, on sufficient consideration, of which the lunatic had the benefit, and are fair and reasonable in the particular case, and the parties cannot be placed in their former state,—unless the mental condition of the lunatic was known to the other party, or he is chargeable with knowing it. This is undoubtedly the rule in England, and the prevailing rule in this country, we think; and we are committed to it in this State, and have been for more than fifty years, as shown by *Lincoln* v. *Buckmaster,* 32 Vt. 652,

decided in 1860, in which the rule above stated was discussed, approved, and acted upon, though the contract was set aside because of the foolhardiness and folly of the other party in leading the lunatic into such a contract as he did, from which the lunatic derived no benefit.

*The Mutual Life Ins. Co.* v. *Hunt,* 79 N. Y. 541, was for the foreclosure of a bond and a mortgage. The case was tried below on the assumption that when the mortgagor executed the papers she was of unsound mind and not capable of executing them; yet it was there held that as the case presented a contract executed on a valuable consideration of which the lunatic had the benefit, made by the plaintiff in good faith, without fraud or unfairness, without knowledge of the insanity, and without notice or information calling for inquiry,—the plaintiff was entitled to recover. That holding was sustained by the Court of Appeals, both on principle and authority. On principle, because the plaintiff's money was had by the defendant, appropriated to her use, and thus tended to increase the body of her estate, and though in some cases a man may now, notwithstanding the old common law maxim to the contrary, be admitted to stultify himself, yet he cannot do so to the prejudice of others, for he would thus make his own misfortune an excuse for fraud, against which the doctrine of that maxim stands unaffected. On authority, the court refers to *Molton* v. *Camroux,* 2 Exch. 486, affirmed in error, 4 Exch. 17, as very much in point and similar in circumstances. There a lunatic bought annuities for his own life of a society that had no knowledge of his lunacy, the transaction being in the ordinary course of the affairs of human life, and fair and *bona fide* on the part of the society. Chief Baron Pollock said that while they were not disposed to lay down so general a proposition as that all executed contracts *bona fide* entered into must be taken as valid though one of the parties be of unsound mind, yet they thought they might safely conclude that when a person, apparently of sound mind, and not known to be otherwise, enters into a contract for the purchase of property that is fair and *bona fide,* and which is executed and completed, and the property, the subject-matter of the contract, has been paid for and fully enjoyed, and cannot be restored so as to put the parties *in statu quo,* the contract cannot

afterwards be set aside by the lunatic nor those who represented him.   In *Elliot* v. *Ince*, 7 DeG. M. & G. 487, the Lord Chancellor referred to *Molton* v. *Camroux* as very sound in principle, namely, that an executed contract, when the parties have been dealing fairly and in ignorance of the lunacy, should not afterwards be set aside; and said that it was a decision of necessity, and that a contrary doctrine would render all ordinary dealings between man and man unsafe; and went on to say that the result of the authorities seemed to be, that dealings of sale and purchase by a person apparently sane, though subsequently found to be insane, will not be set aside against those who have dealt with him on the faith of his being of competent understanding.   And the New York Court of Appeals, in the case above referred to, after quoting what the Lord Chancellor said of the soundness of *Molton* v. *Camroux*, goes on to say that so it has been held, and like contracts enforced upon the same principle, in repeated instances in that and other states, citing cases from different jurisdictions, and saying that they stand on the maxim that he who seeks equity must do equity, which was applicable to the case then in hand, for the defendant sought to deprive the plaintiff of its remedies to enforce the security while she retained the benefit of the contract, which, it said, was so plainly inequitable and unjust as to render further discussion unnecessary.

*Flach* v. *Gottschalk Co.* 88 Md. 368, 71 Am. St. Rep. 418, 41 Atl. 908, 42 L. R. A. 745, is a well considered case on this subject, and says that the principle that holds the lunatic liable in cases of this kind has long been acted upon in equity, and that such contracts are enforced against the lunatic, not so much because they possess the legal essential of consent, as because by means of an apparent contract he has gained an advantage or a benefit that cannot be restored, and that therefore it would be inequitable to permit him, or those in privity with him, to repudiate it.

But there are cases holding the other way, and among them, and as strong as any, perhaps, is *Gibson* v. *Soper*, 6 Gray, 279, 66 Am. Dec. 414, which is much relied upon by the defendants.   But we cannot adopt the view taken in those cases, for, as we have said, we are committed to the other view, which we think the more just and equitable view.   Moreover, our

best text-writers adopt that view.  Thus, Judge Story says that fraud is the ground on which courts of equity now set aside the contracts of lunatics.  That those courts deal with the subject on the most enlightened  principles, and  watch with jealous care every attempt to bargain with them; and that when, from the nature of the transaction, there is not evidence of entire good faith, or the contract is not seen to be just in itself, or not for the benefit of  the lunatic,—they will set it aside or make it subservient to his just rights and interests.  But that when the contract is made in good faith, without knowledge of the incapacity, with no advantage taken of the lunatic, and is for his benefit, and the parties cannot be placed *in statu quo,*—the contract will not be set aside.  1 Story's Eq., Redf. Ed. §§227, 228.  So Mr. Pomeroy says that when a contract is made in ignorance of the insanity, with no advantage taken, and in perfect good faith, a court of equity will not set it aside if the parties cannot be restored to their original position and injustice would be done.  2 Pom. Eq. §946.

It is unnecessary to consider the subject further, and the result we have reached precludes the idea of intervention by the minor daughter as a creditor.

*Decree affirmed and cause remanded.  Let a new time of redemption be fixed.*