**SAFE DEPOSIT & TRUST CO. OF BALTI-
MORE v. TAIT, Internal Revenue
Collector.**

No. 4487.

District Court, D. Maryland.
Dec. 12, 1931.

Alexander Armstrong and Arthur Machen, Jr., both of Baltimore, Md., for plaintiff.

Simon E. Sobeloff, U. S. Atty., and Chas. G. Page, Asst. U. S. Atty., both of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The plaintiff sues to recover an alleged overpayment of federal estate taxes on the estate of the late Thomas H. Bowles, who died July 24, 1923. In December, 1920, more than two years before his death, Thomas H. Bowles transferred certain preferred and common shares of stock of the Marine Securities Company to his wife, Louise C. Bowles, absolutely. In the executor's return, the fact of this transfer was disclosed and the contention submitted that the value of the stock should not be included in the estate, on the ground that the transfer was not made in contemplation of death and was not intended to take effect in possession or enjoyment at death. But the collector rejected the contention and insisted on the payment of tax on the value of the stock, to wit, a tax of $19,300.40 on a value of $193,004. The plaintiff paid the tax so demanded and filed a petition for refund, which was overruled. Mr. Bowles was a resident of Maryland, and his estate was administered in the orphans court of Baltimore county, Md.

Defendant's fourth plea to the second count of the declaration traverses the allegation that the transfer was not made in contemplation of death. The plaintiff first demurred to this plea on technical grounds but I understand the demurrer is withdrawn and issue will be joined as to the fact.

But the defendant's third plea sets up the defense that, at the time of the transfer of the stock, "the said Thomas H. Bowles was not mentally able to realize the nature of the alleged act and that the same being thereby wholly null and void," the tax imposed was, therefore, legal. The plaintiff has demurred to this plea. The substantial question presented is whether, under the Revenue Act of 1921 (42 Stat. 227), the value of the property conveyed away during his lifetime by one *non compos mentis* is nevertheless lawfully required to be included in the valuation of the gross estate for the computation of estate taxes.

Sections 401 and 402 (a) of the Act are as follows:

"Sec. 401. That, in lieu of the tax imposed by Title IV of the Revenue Act of 1918, a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 403) is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act, whether a resident or nonresident of the United States."

"Sec. 402 * * * (a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate."

Other subsections of section 402 require the inclusion in the value of the gross estate of (b) the interest of a surviving spouse; (c) the value of property transferred or put in trust in contemplation of, or intended to take effect in possession or enjoyment at or after death; (d) property held jointly or as tenants by the entirety; (e) property passing under a general power of appointment; and (f) proceeds of life insurance policies, to a certain extent.

It is at once apparent that the particular item of property is not taxable under subsections (b), (d), (e), or (f), and, as a matter of pleading, the possibility of its being taxable under section (c) is eliminated for present considerations, because the declaration expressly alleged that the transfer was made not under conditions covered by subsection (c) and the third plea now demurred to does not traverse this allegation. It necessarily results, for the purpose of passing on this demurrer, that if the property is taxable it must be by reason of subsection (a); that is to say, because at the time of the death of Mr. Bowles he had an interest therein which, after his death, was subject to (a) payment of the charges against his estate, and also (b) to the expenses of its administration, and (c) also subject to distribution as part of his estate. Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156. The exact question on the demurrer, therefore, is whether the single fact that Mr. Bowles was *non compos mentis* at the time of making the transfer to his wife, more than two years prior to his death, subjects the stock so conveyed by him to the payment of his debts and expenses of administration of his estate, and to distribution as a part of his estate.

At the outset, it is to be noted that the plea does not allege that Mr. Bowles had

been adjudicated *non compos mentis,* nor that he was under guardianship at the time, nor that his alleged incompetency was known to the grantee. Nor do the pleadings allege whether the transfer was purely voluntary or based on a partial or adequate consideration. It should also be noted the plea does not allege that the transfer was "merely colorable," nor does it allege any conspiracy or fraudulent intent of any kind with respect either to creditors or evasion of taxation. The plea does allege that the transfer was wholly null and void, but this is a conclusion of law based only on the bare fact alleged that Mr. Bowles "was not mentally able to realize the nature of the alleged act."

 The first question for consideration is what is the effect of the allegation that the transfer was wholly null and *void.* Is the conclusion of law so alleged justified from the bare fact of mental incompetency not established by adjudication, and where the alleged lunatic is not under guardianship at the time? The ultimate question is whether the property is subject to the payment of costs of administration and to distribution as part of the estate of Mr. Bowles. This is necessarily to be determined by the local law, as in the Harrelson Case, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156; and I think the Maryland law in this case is also a "rule of decision" in the sense of the decisions of the Supreme Court applying the rule of the United States Code Annotated, Title 28, section 25. Burgess v. Seligman, 107 U. S. 20, 33, 2 S. Ct. 10, 27 L. Ed. 359; Sim v. Edenborn, 242 U. S. 131, 135, 37 S. Ct. 36, 61 L. Ed. 199; E. Hines Yellow Pine Co. v. Martin, 268 U. S. 458, 45 S. Ct. 543, 69 L. Ed. 1050; Old Colony Trust Co. v. City of Tacoma, 230 F. 389 (C. C. A. 9th).. In my opinion, the Maryland cases very clearly hold that contracts and conveyances by persons *non compos mentis,* before adjudication and not under guardianship, are merely *voidable,* and not *void.* Atkinson v. McCulloh, 149 Md. 662, 132 A. 148; Flach v. Gottschalk Co., 88 Md. 368, 41 A. 908, 42 L. R. A. 745, 71 Am. St. Rep. 418; Riley v. Carter, 76 Md. 581, 25 A. 667, 19 L. R. A. 489, 35 Am. St. Rep. 443; Evans v. Horan, 52 Md. 602. And this rule is in accordance with the great weight of authority. 32 C. J. page 742, § 528. And I understood the United States attorney at the oral argument, to concede that for the purposes of the demurrer the allegation of the plea should be treated as if it characterized the transaction as voidable instead of wholly null and void.

In any event, I think it must be so regarded under the Maryland law; and, if so, then it follows that the property in its present situation is not an asset of the estate.

The question here is not similar or analogous to cases of transfers or gifts held invalid for want of insufficient consummation as, for instance, where there is no sufficient delivery. See White v. Bingham, 25 F.(2d) 837 (C. C. A. 1st). The exact question, as has been already said, is whether this property, under the circumstances alleged, is nevertheless subject to debts, expenses of administration and distribution as a part of the estate of Mr. Bowles.

 It does not appear that the estate without this property is insolvent or that there are any unpaid creditors. If it be assumed that the property could be subjected to the claims of creditors, reference may be made to the Maryland Code, article 45, section 1, which provides as follows: "No acquisition of property passing to the wife from the husband after coverture shall be valid if the same has been made or granted to her in prejudice of the rights of his subsisting creditors, who, however, must assert their claims within three years after the acquisition of the property by the wife, or be absolutely barred, and, for the purpose of asserting their rights under this section, claims of creditors of the husband not yet due and matured shall be considered as due and matured."

It does not appear that this conveyance from husband to wife was in fact attacked by creditors within the period of limitation permissible. However, as Mr. Bowles died within less than three years after the conveyance, it may be assumed that, at the time of his death, this property could have been subjected to the payment of his debts subsisting at the time of the conveyance, if there had been any still unpaid. Whether this subjection to *some* of the debts is sufficient to comply with the requirement of section 402 (a) that the property must be "subject to the payment of the charges against his estate," may be debatable; but if it be assumed that it is subject to this payment, still the property would not be taxable unless it is *also* subject to the expenses of administration and to distribution as a part of his estate. It is obvious that under existing conditions, as neither Mr. Bowles during his lifetime, nor his personal representative after his death, has challenged this conveyance, the property is in fact now not part of his estate, and was not a part of his estate at the time of his death. It could have

been made a part of his estate after his death only by a successful direct proceeding brought by the executor against Mrs. Bowles, who claims it in her own right adversely to the executor. And to hold that for estate tax purposes it is to be included in the estate is to advance the proposition that the conveyance can be collaterally attacked. It has been held that conveyances by persons *non compos mentis* are not subject to collateral attack. 32 C. J. 530, page 744. See Evans v. Horan, 52 Md. 602, 612.

◼ The proposition now advanced by the government is novel. It is freely stated by counsel that no precedent for or against the contention can be found. If sound, it will establish an entirely new principle in estate or inheritance taxation, both federal and state. The District Attorney has advanced an interesting and attractive argument in support of this new principle of taxation. The judicial mind ought not be impervious to ideas, merely because they are new, provided they are sound in principle. But in view of the wide extent of inheritance taxes and the number of years during which they have existed in the scheme of either state or federal taxation, it is imperative that a new principle not expressly established by statute within Constitutional limitations ought not to be accepted unless clearly within the reach of the language of the applicable taxing statute under consideration, especially when, as in this case, the result would be to introduce great confusion into the administration of estates. The Supreme Court has recently reiterated that: "in statutes levying taxes the literal meaning of the words employed is most important for such statutes are not to be extended by implication beyond the clear import of the language used." Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 51, 75 L. Ed. 156; United States v. Merriam, 263 U. S. 179, 187, 188, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547.

And where there is doubt as to the meaning of the statute it should be resolved in favor of the taxpayer. Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53, 62 L. Ed. 211; Reinecke v. Trust Company, 278 U. S. 339, 348, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397.

The argument urged by the District Attorney based upon Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388, and Reinecke v. Trust Company, 278 U. S. 339, 49 S. Ct.

123, 73 L. Ed. 410, 66 A. L. R. 397, is that where the owner of property parts with it, but reserves the power of recall during his lifetime, his death is the fact or event which, by removing the possibility of revocation of the gift or transfer, makes the gift absolute, and in this sense the property is to be considered as transferred by his death to the beneficiary. And thus it is argued in the instant case that as Mr. Bowles could, during his lifetime, have avoided the gift by direct action against his wife as the donee, her possession did not become absolute until his death. But I think there is no true parallel between the cases cited and the instant case. Here the question is whether the particular property is within the reach of subsection (a), while the Reinecke Case arose under subsection (c), and the Chase Bank Case under subsection (f). The real significance of the reserved powers in those cases was not to bring the transaction *within the scope of the language* of the respective sections, but to meet constitutional objections against the tax which would otherwise have existed. See Phillips, Collector, v. Dime Trust & Safe Deposit Co., Executor, 52 S. Ct. 46, 76 L. Ed. ——, decided by the Supreme Court of the United States, November 23, 1931. And I think there are obviously important differences between powers reserved to revoke a trust or to change the beneficiary in life insurance, on the one hand, and a mere right of action to avoid a conveyance by a lunatic, on the other. In the former case, the reserved power is an integral part of the instrument creating the gift; while in the latter, the conveyance is at once absolute in form and effect subject only to possible defeat by a plenary lawsuit. It must not be forgotten that the statute taxes a transfer of property made effective by death, and the tax is measured by the value of the property so transferred. In the cited cases, the Supreme Court found that the transfers became absolute and unconditional upon the fact of the death; but in the instant case, this is not true because the right to avoid the conveyance did not cease with the death of Mr. Bowles, but, as is conceded by counsel, might have been exercised, if the facts warranted it, by his personal representative. And in this respect, this present case is more like the "Five Trusts" in the Reinecke Case which were held not subject to taxation, than to the "Two Trusts" which were subject to the tax. In this case, the death of Mr. Bowles has not of itself transferred any interest in this property to his estate. At the most, the only right

that passed to the executor was a possible lawsuit against Mrs. Bowles, which the executor has not brought. Its failure to do so is not alleged to have been wanting in good faith or for the evasion of taxes. Whether such a suit, if it had been brought, would have resulted in the recovery of the stock or the value thereof, is necessarily speculative. It is not alleged in the pleadings whether or not Mrs. Bowles still holds the stock, and, if not, whether a decree for its value if obtained against her could be collected.

 Even if the transfer to her by Mr. Bowles had been void, and not voidable only, the stock or its value would not be an asset of the estate under subsection (a), unless in fact recovered by the executor. The collection of the assets of an estate is by the Maryland law primarily committed to the executor or administrator. If he fails in his duty, the proper parties in interest can obtain appropriate relief by application to the orphans' court appointing him. But property held adversely cannot be treated as assets of the estate until in fact collected or reported by him as collectable. Courts should, of course, be sedulous to prevent tax evasion, and it is conceivable that a case may arise where both the right and duty of the executor or administrator to recapture assets of the estate is so plain that a failure to do so would be clearly indicative of an attempted tax evasion. That situation is not presented by the pleadings in this case.

"Taxation, as it many times has been said, is eminently practical." Tyler v. United States, 281 U. S. 497, 503, 50 S. Ct. 356, 359, 74 L. Ed. 991, 69 A. L. R. 758. A practical mind, whether legal or lay, would not be likely to consider the property in this case as a part of the estate of Mr. Bowles. And there seems no more reason to attribute the idea to the legislative mind in the construction of the general language of subsection (a). The question here is not whether Congress would have the *power* to tax the property, but whether it *has* taxed it. And if, as must be, the scope of that subsection is restricted to its literal wording, we must conclude that this particular property is not covered. It is urged by counsel for the government that the property in this situation should not be permitted to escape the tax; but I think this is a consideration more properly addressed to the legislative power than to the judicial.

For these reasons, the demurrer is sustained.