## PAUL M. DeCRETTE ET AL.

*vc.*

## CHARLES J. BONAPARTE.

*Sale of Land—Specific Performance—Delay in Payment.*

One seeking specific performance of a contract for the sale of land must show that he has performed or was ready to perform his part of the contract, and has not been guilty of laches or unreasonable delay.                                                      p. 258

In a proceeding for specific performance by vendees against the vendor, where the contract named the first of a certain month as the time for the payment of the balance of the purchase money, and the time was subsequently extended by the defendant to the seventh and then the fourteenth of the month, and the plaintiffs were not ready on either of those dates to pay the money or perform their part of the contract, *held* that the lapse of time after the purchase money was due was, under the facts and circumstances of the case, a bar to the relief claimed.
                                                      pp. 259-263

*Decided June 29th, 1921.*

Appeal from the Circuit Court No. 2 of Baltimore City (STUMP, J.).

Bill by Paul M. DeCrette and Margaret DeCrette, his wife, against Charles J. Bonaparte. From a decree for defendant, plaintiffs appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Joseph C. France,* with whom was *J. Stanislaus Cook* on the brief, for the appellants.

Time was not of the essence of the contract. *Diamond* v. *Shriver,* 114 Md. 648; *Jaeger* v. *Shea,* 130 Md. 4.

Time not being of the essence of the contract, plaintiffs were entitled to a reasonable period after that named in the contract to make payment. *Wilson* v. *Herbert,* 76 Md. 499.

The right to a forfeiture, such as that asserted by defendant, must be clearly shown. *Cole* v. *Hines,* 81 Md. 481; *Whiteford* v. *Yellott,* 104 Md. 196; *Brown* v. *Rasin Monumental Co.,* 98 Md. 9.

Where time is not of the essence of the contract, it can be made so only by a distinct notice to that effect, and such notice must allow a reasonable time. 39 *Cyc.,* 1370, note 52; and such notice, if given, may be waived. 39 *Cyc.,* 1341, end of note 75; 39 *Cyc.,* 1345.

The effort to make time of the essence of the contract by the letter of June 4th, naming June 7th, was unreasonable, but in any event it was waived, and there was no further notice. One who contends that a contract, which could not terminate merely because of non-payment on June 1st, did so terminate because of non-payment on June 14th, must show that he gave a clear, definite and reasonable notice of the termination date.

Defendant could not terminate the contract and forfeit the plaintiffs' rights thereunder, since defendant had not tendered a deed, the contract providing for payment "on delivery or tender of a deed." *Cranwell* v. *Clinton Realty Co.,* 67 N. J. Eq., 640; *Claude* v. *Richardson,* 127 Iowa 623; *Annotations to Reese* v. *Wheatfield,* 28 L. R. A. N. S. 957; 39 *Cyc.,* 1375-1376.

Defendant could not rescind without restoring or tendering the payment already made by plaintiffs, since, in the absence of a specific provision in regard to the matter, the vendor must restore or tender what he has received as a condition precedent to his right to rescind. 39 *Cyc.,* 1378; 3 *Williston, Contracts,* sec. 1640.

*Arthur L. Jackson,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is a bill in equity filed by the appellants, the plaintiffs below, against the appellee, the defendant below, for the specific performance of a contract of sale of all that lot of ground situate in Baltimore City, known as No. 6 South Calvert Street, subject to an annual rent of twelve hundred dollars per annum, and also subject to a short term lease to the American Express Company.

The contract is dated February 2, 1920, and is as follows:

"Baltimore, February 2, 1920.

"It is mutually agreed between Charles J. Bonaparte, of the first part, and Paul M. and Margaret DeCrette, of the second part, as follows:

"The party of the first part agrees to sell and the parties of the second part agree to buy the property known as No. 6 South Calvert Street, in Baltimore City, fronting about 27 feet and running back about 156 feet, subject to a ground rent of $1,200 per annum, and also to a lease to the American Express Compnay, and free of all other liens and incumbrances, at and for the sum or price of $55,700, whereof $1,000 is paid at the time of signing these presents and receipts thereof hereby acknowledged, and the remaining $54,700 to be paid not later than June 1st next, on delivery or tender of a deed covering a good and merchantable title to the said premises, in accordance with the contract; provided that if such good and merchantable title cannot be conveyed by the party of the first part, the said $1,000 is to be returned and both parties released from this contract. Taxes, ground rent, water rent and rent under the lease aforesaid are to be adjusted to the time of passing title.

"Witness the hands of the said parties on the day and year first above written.

"Charles J. Bonaparte,
"Paul M. DeCrette,
"Margaret DeCrette,
"By J. R. Staum, their Attorney."

The amended bill, filed on the 3rd of August, 1920, sets out the contract and then charges:

Second: That at the time of the signing of the contract, the plaintiffs were conducting upon the premises the business of a lunch room on the cafeteria system, and had installed numerous fixtures for the purpose of the business, and had made alterations in the premises at a great expense to themselves; that since the signing of the contract they have undergone other and additional expense tending to enhance the value of the property.

Third: That on or about the 14th day of June, 1920, the plaintiffs being then and there desirous of completing the transaction and paying to the defendant the sum due to him, as a balance of the purchase price for the property, advised the defendant to that effect, and requested him to make an appointment for the execution of the proper deeds for the conveyance of the property, and were informed by the defendant that he considered the contract at an end and had sold the property to other parties, the names of whom are unknown to the plaintiffs. And they further aver that, while the contract provides for settlement as of June 1st, the defendant never treated the time of settlement as of the essence of the contract, and in fact from time to time extended the time of settlement for the property.

Fourth: That the plaintiffs have performed all the requirements of the agreement on their part to be performed, but the defendant refuses to make a conveyance of the property, as he is in duty bound to do.

The prayer of the bill is, that the contract be specifically enforced and that the defendant may be decreed to convey unto the plaintiffs the property in question, upon the payment of the balance of purchase money still due and owing to him, and for general relief.

The defendant, in his answer, admits the execution of the contract and also the payment to him of $1,000, mentioned in the contract.

Second: The defendant avers that at the date of the contract, the plaintiffs were sub-tenants of a portion of the property by virtue of a sub-lease made to them by the American Express Company, but he denies that, since the date of the agreement with him, they have expended any appreciable sum or sums of money in enhancing the value of the property.

Third: He further avers, that on May 17, 1920, he addressed a letter to the present solicitor of the plaintiffs, with whom all the negotiations connected with the contract had been held, and which letter is as follows:

"The date of the consummation of the sale of No. 6 S. Calvert Street will be two weeks from tomorrow, and as the amount is rather large, I wish to make certain arrangements as soon as possible thereafter, for which arrangements it is needful that I should give some preliminary notice. I write, therefore, to enquire at what hour on Tuesday, June 1st, your clients will find it convenient to consummate the transaction, and also whether it will suit you and them to do this at my office, or if not, at what place you desire to have it done." (Marked Defendant's Exhibit A.)

Fourth: The defendant further avers that, in response to this letter, the solicitor of the plaintiffs called several times at the office of the respondent, but never fixed any hour or place to consummate the sale, but lamented the difficulties encountered by his clients in raising the money to pay the stipulated price and the usurious rates of interest demanded of them, and urged the defendant to allow a part of the purchase price to remain secured by a purchase money mortgage, which the defendant could not consent to do. Finally, this defendant on June 4, 1920, sent the following letter, addressed to the present solicitor of the plaintiffs, and marked Defendant's Exhibit B:

"I am sorry to have to be so positive, but, unless your clients are in a position to close the transaction

between us, in accordance with the terms of our contract on Monday next, 7th inst., I shall be obliged to treat the deposit as forfeited and the transaction as abandoned. This is really necessary for my protection against loss."

Fifth: The defendant also avers that the present solicitor for the plaintiffs thereafter made by telephone several appointments to see the defendant, but failed to keep the same until, on June 14th last past, this defendant called up the office of the representative of the plaintiffs and stated, in substance, that he was about to close with another offer for the said property, and wished to know if the plaintiff had any thing to say on the subject. Whoever answered the said telephone then stated that the present solicitor was absent from his office. Later, on the same day, this defendant received a message to the effect that the plaintiffs had made arrangements to consummate the sale, and therefore he wrote the present solicitor a letter, which is marked Defendant's Exhibit C, and is as follows:

"June 14, 1920.

"I am duly in receipt of your note. I regret to say that I am no longer free in regard to the matter, having been obliged, from a reasonable regard for my own interests, to close with the offer which was made to me and which I have had under consideration during our recent negotiations, but could not, of course, act upon so long as you might be in a position to put through our transaction. I cannot now waive your failure to comply with the terms of the contract without the consent of the other parties to the new agreement, and I do not think I can obtain such consent. I have, however, your deposit, and I am prepared to return this (although I do not, of course, feel bound to do so) in view of the disappointment of your clients and your own. I shall be at my office on Thursday next, and I suggest that you see me some time between 11 A. M. and 4 P. M."

Sixth: The defendant also avers that, between the dates of defendant's Exhibits A and C, the defendant had been approached by certain other parties with a proposal for the purchase of the property mentioned in the contract of February 2nd. He had told the plaintiffs' present solicitor of this proposal, and the reference to his protection against loss in defendant's Exhibit B was, and was understood by the plaintiffs' present solicitor, to have then been occasioned by his unwillingness to lose the sale of the property in question.

Thereafter, to wit, on June 14th last past, this defendant entered into a contract for the sale of the property, at the same price mentioned in the contract of February 2nd. This defendant denies that he failed to treat the time of settlement as of the essence of that contract, and refers in proof of this statement to defendant's exhibits A and B. This defendant holds the sum of $1,000, heretofore paid him on behalf of the plaintiffs, as a deposit made for their benefit, is prepared and willing to pay over the same to the plaintiffs, upon the dismissal of the present suit, and prays that the bill be dismissed and that he may be discharged with his legal costs.

The testimony of a number of witnesses on the part of the plaintiffs and defendant was taken in open court, and from a decree of Circuit Court No. 2 of Baltimore City, dated the 20th day of January, 1921, dismissing the bill of complaint, with costs to the defendant, the present appeal has been taken.

The law is well settled in this State, in cases of this character, that a court of equity will not decree specific performance in a doubtful case. The plaintiff is bound to make out his case by satisfactory proof, and must show that he has performed or was ready to perform his part of the contract, and has not been guilty of laches or unreasonable delay. *Penn* v. *McCullough,* 76 Md. 229; *Thistle Mills Co.* v. *Bone,* 92 Md. 57.

The contract of sale in this case, it will be seen, is plain and explicit and free from dispute. By its terms the defend-

ant acknowledged the receipt of the sum of $1,000 on account of the purchase money, and the remaining $54,700 to be paid not later than June 1st, 1920, on delivery or tender of a deed covering a good and merchantable title to the property, in accordance with the contract.

On May 17, 1920, the appellee wrote a letter to the attorney for the appellant, in which he stated that the day for the consummation of the sale was "two weeks from tomorrow," and as the amount was rather large, he desired to make certain the arrangements about it. He wrote to inquire at what hour on Tuesday, June 1st, his clients would find it convenient to consummate the transaction, whether at his office, or at whatever place they desired to have it done.

The appellee testified that he had two or three interviews, between the 20th of May and June 1st, with Mr. Staum, the attorney for the appellants, to the following effect: "Mr. Staum told me that he was finding it very much more difficult than he had expected to raise the money to finance this transaction; that the difficulty did not arise from the lack of security but from the tightness of the money market, and the desire of possible lenders of the money to obtain usurious rates of interest. He mentioned to me some very exorbitant demands that had been made to him by persons to whom he had addressed himself for that purpose, and he suggested to me that he would be very glad to have a part of the purchase money remain as a mortgage on the premises and would pay me a reasonable bonus if I were willing to make that arrangement. I told him that it would not be practicable for me to do that, owing to the purpose to which I wish to put the money that I would obtain for this property. I had, as I say, at least two, possibly more, conversations with Mr. Staum on this subject, and he did not fix any time when the sale could be comsummated, nor did he state positively that he would be able to complete the sale. In the course of those conversations I told him, which was a fact, that I had been approached by some other parties who were anxious to purchase the prop-

erty and who were willing to give the same amount which Mr. and Mrs. DeCrette had agreed to give. There also were one or two occasions when I was to have seen Mr. Staum by appointment, and he was unable to come."

Nothing having been accomplished by the interviews referred to, the appellee, on the 4th of June, wrote the following letter, addressed to Mr. Staum: "I am sorry to have to be so positive, but unless your clients are in a position to close the transaction between us in accordance with the terms of our contract on Monday next, seventh instant, I shall be obliged to treat the deposit as forfeited and the transaction as abandoned. This is really necessary for my protection against loss."

On June 5th, Mr. Staum answered the letter, in which he says: "Please pardon me for not keeping my appointment with you last Friday, but I was so busy working on a matter in which we are both interested that I overlooked our engagement until it was too late to keep it. I will call to see you Monday afternoon."

The appellee further testified that, "on June 14th, when I was in town and at my office, I had a communication from the representatives of the other parties who wished to purchase this property, who wished to know if I was prepared to give them an answer in the matter. I had told them or their representative that I was not free to deal with them in consequence of the arrangement I had made with Mr. and Mrs. DeCrette, so provided that they were able to complete the sale of the property, that had taken place, I think, sometime in the course of May. In response to this communication I told the lawyer in question that I would deal with him—give him an answer—at one o'clock on that day, and in the meantime I called up Mr. Staum's office by telephone and asked if he had anything further to say on the subject of this contract. Whoever answered the telephone said that he was absent from the office, and I left the message that I was about to close the transaction for the sale of this property, and it was very im-

portant that he should come to see me or communicate with me on the subject prior to one o'clock on that day (I think it was possibly twelve o'clock on that day). The person who answered the telephone said that they would give him the message when he came in. Then I did not hear from him up until one o'clock and then I entered into a transaction with the other parties who were represented by Mr. Paul M. Burnett, in form of a written contract."

There is also evidence to the effect that, on the 14th of June, late in the day, Mr. Staum called at the office of the appellee, and left a letter, as follows: (It is dated Monday): "Dear General:—I am sorry to have missed you, but I had to come quite a distance; I feel reasonably sure I have financed the deal. One party has promised me an answer this afternoon, another on Thursday. Both have the money, and we have been able to bring the mortgage down sufficiently low to be attractive. Thanking you for your patience and courtesy in this matter."

The appellee answered this letter on the same date, June 14, 1920, and it is as follows: "I am duly in receipt of your note. I regret to say that I am no longer free, in regard to the matter, having been obliged, from a reasonable regard for my own interest, to close the offer which was made to me and which I have had under consideration during our recent negotiations, but could not, of course, act upon so long as you might be in a position to put through our transaction. I cannot now waive your failure to comply with the terms of the contract without the consent of the other parties to the new agreement, and I do not think I can obtain such consent. I have however your deposit and I am prepared to return this, although I do not, of course, feel bound to do so, in view of the disappointment of your clients and your own. I shall be at my office on Thursday next and I suggest that you see me between 11 A. M. and 4 P. M. I remain as ever, Yours most truly."

There was no answer to this letter of the 14th of June, but the testimony shows that Mr. Staum called to see the appellee sometime about the 14th of June, and expressed disappointment at the failure of the sale. He urged the appellee to write to the parties and ask them to rescind their contract for the purchase. On the 24th of June the appellee wrote the following letter to Mr. Staum: "I wrote to the parties interested, after our last interview, as I promised you. I have only just learned that a telephone message was sent in reply saying that my letter had been received, but that the party addressed had nothing to say. I infer from that that the would-be purchasers do not desire to negotiate at all events with me. I remain, Yours respectfully and truly."

We have set out the correspondence and the testimony somewhat at length, and while there is some conflict in the testimony, it shows beyond question that the plaintiffs failed to perform their part of the contract of sale and that they were never ready to pay the purchase money.

The time for the payment of the remaining purchase money ($54,700) was fixed by the contract, to be paid not later than June 1st next. The time, it will be seen, was first extended from June 1st, 1920, to June 7th, 1920, and then from June 7th to the 14th of June, 1920, and the appellants were not ready on either of these dates to pay the purchase money, or to perform their part of the contract.

The lapse of time in this case, after the purchase money was due, under the facts and circumstances disclosed by the record, we think, is a sufficient bar to the relief claimed and sought by the appellants.

The appellants were unable to comply with any of the terms of the very liberal extensions offered to them, and under these circumstances, we think, the appellee was legally authorized to make the contract of June 14, 1920, with Smith, Lockhart & Co. *Newman* v. *Johnson,* 108 Md. 367.

In *Bamberger* v. *Johnson,* 86 Md. 38, it is said, a party who asks a court of equity to decree the specific performance

of a contract must show that he has fully performed all that
the contract required to be performed on his part.

In *Penn* v. *McCullough,* 76 Md. 231, this Court approves
the language of LORD ALVANLEY in *Milward* v. *Thanet,* 5
Ves. Jr. 720, that a party cannot call upon a court of equity
for a specific performance unless he has shown himself ready,
desirous, prompt and eager. Or, as was said by LORD CRAN-
WORTH in *Eads* v. *Williams,* 4 DeG. M. & G. 691, specific
performance is relief which this Court will not give unless in
cases where the parties seeking it come promptly and as soon
as the nature of the case will permit.

In *Newman* v. *Johnson,* 108 Md. 375, this Court said:
"When Flanigan (second purchaser) appeared and proposed
to purchase, prompt action was required of Newman (seller)
or he would have lost that opportunity to sell, and he could
not be expected to wait indefinitely for the performance of
promises repeatedly made and broken. He did, however, give
Johnson (first purchaser) reasonable notice that unless the
purchase money was paid he would consider the contract
cancelled. Flanigan assented to this and neither took nor
sought to take any advantage of Johnson in the matter. Both
he and Newman are shown to have acted throughout in good
faith toward Johnson, who has only his inability or tardiness
to blame for his situation. Even if it were conceded that
Johnson was, in perfect good faith, insisting upon his right
to demand a release from the railroad, he should have elected
either to accept the title without a release, or cancel the con-
tract upon Newman's refusal to procure a release and enforce
whatever rights, if any, he had under those conditions. He
could not play fast and loose with the contract, speculating
upon the contingency of a re-sale, instead of complying with
his own absolute obligation as to payment. * * * Flanigan
thus acquired in good faith valuable contract rights in this
property after repeated defaults by Johnson; rights much
more strongly invoking the favor of a court of equity than
any acquired by Johnson in view of all his conduct in the

matter.   In such cases the court will consider the claims of third parties who have dealt, as to the property, in good faith and will not decree specific performance if injustice will thereby be done to them or injury inflicted upon the defendant."

We have examined the very carefully prepared brief, filed on behalf of the appellants, but are unable to hold that this case falls within the principles of law announced by those cases cited therein.

We find nothing in the motion on behalf of the appellee to dismiss the appeal and it will be overruled.

For the reasons stated, the decree of the lower court in this case will be affirmed.

*Decree affirmed, with costs.*