CLAYTEN ET UX., ETC. *v.* PROUTT ET AL.

[No. 104, September Term, 1961.]

*Decided December 8, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, and SYBERT, JJ.

*Charles C. W. Atwater* and *Walter C. Mylander, Jr.,* with whom was *Thomas A. Garland* on the brief, for appellants.

*Richard A. Reid,* with whom were *Kenneth C. Proctor* and *Proctor, Royston & Mueller* on the brief, for appellees.

PRESCOTT, J., delivered the opinion of the Court.

A decree of the Circuit Court for Baltimore County ordered the appellants, as sellers, to convey, upon the payment

to them of $2,000, a parcel of land known as Lot 16 in "Dunmore Estates" unto the appellees, and they have appealed.

In June of 1958, Robert G. and Thomas G. Proutt, the appellees, entered into a contract with Benjamin Clayten and his wife, two of the appellants, whereby the Claytens agreed to convey unto a corporation to be formed by the Proutts a tract of land containing sixteen building lots for the sum of $104,000. The company, Halcyon Land Corporation, was incorporated, and on June 30, 1958, the lots were conveyed to it. At that time, the Proutts paid $6,000 in cash and the corporation executed a purchase money mortgage for $98,000 secured by all of the lots except Lot 16, which was conveyed to the Proutts unincumbered. The Proutts began the construction of a residence on Lot 15. From June to November 21, 1958, the Proutts paid an additional $6,000 to the Claytens, but were in default under a provision of the original contract, whereby they had agreed to "use one lot per month." In the latter part of November, the Claytens claimed a default in the mortgage, and took all the stock of the Halycon Land Corporation, pursuant to an escrow agreement. At, or about, this time, the Proutts had obtained a buyer for Lot 15, upon which they had by now completed the dwelling, but were not in a position to convey title thereto. They did, however, own Lot 16, which was not encumbered.

In an attempt to resolve the unpleasant situation that had arisen, the parties, on January 15, 1959, entered into the agreement sued upon in this case. By this agreement, the Proutts agreed to convey Lot 16 to the Claytens, and the Claytens (as sole owners of the corporation) agreed to convey Lot 15 to the Proutts. The Claytens further agreed that the Proutts would have the right to have Lot 16 reconveyed to them if they: (1) paid $2,000 as an adjustment of the purchase price and public works agreement for Lots 15 and 16; (2) agreed to commence construction of a house, according to plans and specifications to be approved by the Claytens, within 120 days; and (3) furnished satisfactory assurance of completion of said house. The Proutts also agreed to remove the underbrush and loose limbs that had been left on the remaining lots as a result of the Proutts' having removed trees when they had had the property.

Lots 15 and 16 were exchanged on January 15th. On April 27, the Proutts secured approval of a commitment for a construction loan in the amount of $24,000. On May 12, through their attorney, they tendered $2,000 to the Claytens, suggesting that settlement be completed on May 13 or 14 and agreeing to furnish assurance of completion at such time. Settlement did not take place on either of those dates nor thereafter (although the 120 day limitation was extended several times by mutual agreement) due to the Claytens' refusal to approve any of the plans and specifications (these latter being labeled "Description of Materials") submitted to them, basing their refusal principally upon an alleged lack of completeness of the plans and the effect of the proposed house on the development as measured by its relation to the house that had been built on Lot 15. It would prolong this opinion to an undue length should we attempt to set forth all of the details relating to the furnishing of plans and specifications by the Proutts to the Claytens, and the Claytens' refusal to approve the same and their reasons therefor. Involved therein are many pages of oral testimony, correspondence of counsel, restrictive covenants,[1] and numerous exhibits, including sets of plans and amended plans made by the Proutts in attempting to comply with the Claytens' demands, as well as the specific and detailed terms of the provisions relating to the approval by the appellants of plans and specifications for any house proposed to be built upon Lot 16, in the contract and also in the deed. This, under the circumstances, we deem unnecessary. The appellees do not attack the validity or legality of the provision, but claim compliance therewith, asserting arbitrary conduct on the part of the appellants in refusing to approve the plans and

---

1. A subsidiary question is raised by the appellants in alleging the chancellor was in error in failing to admit into evidence and give consideration to the restrictive covenants pertaining to approval of plans and specifications, contained in the deed from the Claytens to the Halcyon Land Corporation. We shall assume, without deciding, the appellants are correct, but this does not affect the result. The appellants do not contend the restrictive covenants gave them the right arbitrarily and capriciously to refuse to approve plans submitted to them.

specifications submitted. The appellants, on the contrary, claim good faith on their part, and that their refusal was in no way arbitrary, unreasonable or capricious.

The chancellor found that the plans and specifications submitted by the appellees were sufficiently complete for the "basis of a decision" by the appellants; that the house proposed for erection was reasonably suitable to the development; and that the appellant's refusal to approve the plans and specifications was arbitrary and unreasonable. After a careful reading of the entire record extract and an examination of the exhibits, we are unable to say that he was in error (even considering the requirements of the restrictive covenants) ; hence the appellants should have approved the plans and specifications as submitted (unless the other question raised, but not yet considered, justified a refusal). *Kirkley v. Seipelt,* 212 Md. 127, 133, 128 A. 2d 430; Miller, *Equity Procedure,* § 660; 49 Am. Jur., *Specific Performance,* § 41. Cf. *Peabody Heights Co. v. Willson,* 82 Md. 186, 205, 32 A. 386; *Yorkway Apts., Inc. v. Dundalk Co.,* 180 Md. 647, 26 A. 2d ·398; *Abell v. Green Mount Cemetery,* 189 Md. 363, 367, 56 A. 2d 24; 14 Am. Jur., *Covenants, Conditions and Restrictions,* § 212.

This disposes of the principal question involved, but there is one other matter that must be considered in determining whether the appellees were entitled to the remedy of specific performance. We pointed out above that they had agreed in the contract to remove "the underbrush and loose limbs." The chancellor found the "lots were not cleared as thoroughly as they might have been but what remained to be done does not seem to be of any great consequence." In reviewing this finding, we cannot say he was clearly wrong. Maryland Rule 886 a. The pictures of the lots, offered as exhibits, lend support to the finding, and Claytens' own testimony indicates that the clearing of the lots did not play an important role in his refusal to approve the plans. His bald statement that, in his opinion, it would cost "several thousand dollars" to clear the underbrush and limbs from the lots, standing alone and without amplification, is not sufficient to render the trial court's finding of fact clearly erroneous.

However, the chancellor went on and held that this provision of the contract was separate and distinct from the provision relating to the conveyance of the lot and the Claytens have "other remedies for the enforcement of this provision of the contract if there has been a substantial breach." The appellees did not sue the appellants for damages for breach of the contract, but elected to request that the contract be specifically enforced. There can be little doubt that one seeking the execution of a contract must, as a general rule, be able to show that he has fully, not partially, performed everything required to be done on his part, or, under some circumstances, that he is ready and desirous to comply with the contract on his part, and has the ability to perform it. *O'Brien v. Pentz,* 48 Md. 562; *Raith v. Cohen,* 142 Md. 38, 50, 119 A. 700; *DeCrette v. Bonaparte,* 139 Md. 252, 262, 114 A. 880; *Sub. Garden Farm Homes Corp. v. Adams,* 171 Md. 212, 218, 188 A. 808; Miller, *Equity Procedure,* § 659. Cf. *Griffith v. Scheungrab,* 219 Md. 27, 35, 146 A. 2d 864 (a case that involved a condition precedent). To this general rule, however, there are certain exceptions. *Foley v. Crow,* 37 Md. 51; *Hammer v. Westphal,* 120 Md. 15, 87 A. 488. One of these exceptions is noted in Restatement, *Contracts,* § 375 (2) and (3), where, in substance, it is said that specific performance may properly be decreed despite a minor breach by the plaintiff, involving no substantial failure of the exchange for the performance to be compelled; and in such a case the defendant has a right to compensation for the breach, which may be given either by making a just abatement in the price or other performance to be rendered, or by making the decree conditional on payment to the defendant of reasonable compensation in money. See also Miller, *op. cit.,* § 660, Maryland cases there cited, and *Soehnlein v. Pumphrey,* 183 Md. 334, 339, 37 A. 2d 843. The above exception is, we think, apposite to the facts involved in the instant case, and the chancellor should have conditioned his decree upon the appellees' compliance with the provision relating to the removal of the underbrush, or the payment of a fair and just amount of money to the appellants to defray the expense of removing the same.

We, therefore, conclude that the chancellor would have been

correct in passing a decree that required a conveyance of the lot by appellants upon the payment to them of the $2,000, had he conditioned the same upon the removal of the brush and limbs by the appellees, or proper monetary allowance made to the appellants for such removal. He should also have included in his decree an allowance to the appellants of $25.00 (an amount agreed to by the parties) to pay an architect to examine the plans. Upon remand, if the chancellor decides to condition his decree upon a monetary allowance to appellants and the parties are unable to agree upon the proper amount thereof, it may become necessary to take additional testimony relative thereto, as the matter is not dealt with very thoroughly in the record before us. Consequently, pursuant to Maryland Rule 871 a, we shall remand the case for further proceedings not inconsistent with this opinion.

> *Decree neither affirmed nor reversed, and case remanded for further proceedings. The costs in this court and below to be paid ¾ by the appellants and ¼ by the appellees.*