WHITNEY, EXECUTOR, ETC. *v.* HALIBUT, INC. ET AL.

[No. 254, September Term, 1963.]

518

*Decided July 7, 1964.*

The cause was submitted to BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

Submitted on brief by *Robert E. Wigginton, Allen A. Sperling* and *Loker, Wigginton & Loker* for the appellant.

Submitted on brief by *Francis W. Hill* and *William O. E. Sterling* for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

Richard H. Whitney, executor and sole legatee under the will of Richard H. Sears, deceased, brought this suit against Hali-

but, Inc. and its transferee, H.I.S. Corporation, primarily for specific performance of a provision in a contract of sale of real estate between Sears as vendor and Halibut as vendee by which the vendee agreed to pay the vendor's federal income tax resulting from his capital gain on the sale. The controversy on this appeal grows out of that provision, the full text of which is set forth later. (Halibut and its transferee either are closely affiliated or have been merged, and will be treated as one in this opinion.) The Circuit Court for St. Mary's County entered a monetary decree in favor of the plaintiff, Whitney, for $2,095.12 and denied all other and further relief. Whitney appeals, claiming that much more is due him.

The contract was executed on November 20, 1958. Under it Sears agreed to sell and Halibut to purchase two tracts of land in St. Mary's County, known as "Society Hill," for a stated price of $250,000. Of this amount $50,000 (including a deposit of $5,000) was to be paid upon execution and delivery of a deed, and the balance of $200,000, to be secured by a purchase money mortgage from Halibut to Sears, was to be paid in ten annual instalments of $20,000 each, with interest at 4%, with provisions for prepayment through the application of 50% of the proceeds of sale of lots, and against such payments partial releases of the mortgage were to be given. The contract further provided that the vendee "grants to the Vendor life occupancy of the house now being occupied by Richard H. Sears together with five (5) acres * * * in addition to the above considerations."

A deed and mortgage embodying the above provisions were duly executed and delivered and the $50,000 payment was made on February 5, 1959. Under the terms of the mortgage the first annual instalment of $20,000 was to be paid on February 5, 1960. For a consideration this payment was subsequently postponed by agreement between the parties.

In addition to the above provisions the contract of sale contained others which were not embodied in the deed or mortgage. Among them were an agreement by the vendee to develop the tract by sections and not to reduce prices of lots once established by more than 25% without the consent of the "mortgagor" (evidently meaning the vendor-mortgagee), the capital

gains tax provision in controversy, and in paragraph 10 a successor clause and an integration clause.

The capital gains tax provision was one of several typed into paragraph 2 following a printed introductory clause stating that "the premises * * * are to be conveyed subject to the following encumbrances and restrictions:" (a somewhat curious introduction to what followed). Five typed paragraphs were added. The first required that the soil pass a percolation test, the second contained the sale and partial release of mortgage clause above mentioned, the third contained the development by sections provision and the restriction on price reductions, also mentioned above, and the fourth provided for Sears' life occupancy of the house and five surrounding acres. The fifth of these paragraphs, which is at the heart of the controversy, reads as follows:

"The Vendees hereby agree to pay to the Vendor[']s account the Federal Income Tax that the Vendor shall be required to pay resulting from the capital gains on the above sale; this tax to be paid by the Vendee when the Vendor's tax is due and payable to the U.S. Government. It is understood and agreed that the Vendee shall not be responsible for any penalty or interest on any payment due unless the penalty or interest is a result of an act of negligence on the part of the Vendee."

Paragraph 10 of the contract of sale is printed and reads as follows:

"That the stipulations aforesaid are to apply to and bind the heirs, executors, administrators, successors and assigns of the respective parties hereto; and that said stipulations contain the final and entire agreement between said parties, neither of which shall be bound by any terms, conditions, warranties or representatives [sic], oral or written, not herein set forth."

Sears received payment of $50,000 on account of the sale price of the property in February, 1959. He filed no federal income tax return in or for that year and died in August, 1960,

without having done so. Indeed, it is probable that he never filed any federal income tax return at any time. The trial judge commented in his opinion drily, and we think aptly, that "the proof shows that Mr. Sears was not only tax conscious but also allergic to paying income taxes." The appellant, as Sears' executor, did file an income tax return for his decedent for the year 1959. In computing it he used such data as he could find with regard to the cost of the Society Hill property to Sears. On these data Sears' cost appeared to be $45,809.00, and his capital gain based on a selling price of $250,000, amounted to $204,191.00. He claims that this is the basis upon which Halibut's obligation is to be computed. In filing the 1959 return he elected to report the sale as an instalment sale. Though he took the position in the trial court that Halibut was liable for the tax computed on a lump sum basis, which would amount according to his calculation to $68,063.07, he has abandoned this claim in this Court and now appears to assert that computing the tax on the basis of an instalment sale, the appellee's liability over the life of the contract will aggregate $23,383.87. This figure is said to be the amount which Sears would have had to pay (apart from interest and penalties) if he had lived.

The appellee sets up several contentions which we outline as follows: (1) that under the contract it is obligated to pay only the capital gains tax for which Sears himself became liable and that it has no obligation to pay any such taxes for which his estate or his legatee may become liable in respect of payments made after Sears' death; (2) that any liability which it may have to Sears' executor on account of the 1959 payment made to Sears during his life is to be computed on his maximum capital gain being $100,000, because Sears represented that it would not exceed that amount; (3) that even if it has a liability to Sears' executor or to his legatee in respect of subsequent payments, it is likewise to be computed on a gain of $100,000, not of $204,191; and (4) that if it has any liability to Sears' executor or to his legatee in respect of subsequent payments, the amount thereof is to be reduced by the share of the federal estate tax on Sears' estate allocable to the value of the income portion of the contract of sale. Both the amount of Halibut's liability and the estate tax deduction are

less if the gain is taken as $100,000 than if it is taken as $204,191.

We are indebted to counsel on both sides for a condensation of the record, and computations submitted by experts for each side help to bring the tax problems into clearer focus. Each of the computations, except for the year 1959, appears to involve one or more assumptions, the correctness of which we are not prepared to accept; but they are helpful, if not conclusive. Both sides appear to agree that any amount or amounts which the vendee may be obligated to pay in respect of the vendor's Federal capital gains tax constitute additional capital gains income to the decedent or his estate or his legatee, as the case may be, in the year or years of payment by the vendee. (See *Old Colony Trust Co. v. Commissioner of Internal Revenue*, 279 U. S. 716; *United States v. Boston & Maine Railroad*, 279 U. S. 732; Brown, *Shifting the Burden of Income Taxes by Contract*, 96 U. Pa. L. Rev. 822; and cases collected in 2 Mertens, *Federal Income Taxation*, § 1128, n. 79; also 140 A.L.R. 517; *C. B. Shaffer*, 29 B.T.A. 1315.)

The trial court admitted parol evidence with regard to negotiations and conversations with Sears before and to some extent after the execution of the contract. Much of it came from persons who were officers, directors or stockholders of Halibut at the time when the contract was executed, and some of it pertained to negotiations before Halibut was incorporated. There was also testimony from other witnesses having no such interest. Much of this testimony was directed to showing that Sears represented that his capital gain on the sale at a price of $250,000 would not exceed $100,000, which means, of course, that his cost of the property was not less than $150,000. From this evidence the trial judge concluded "that the assurance of Mr. Sears, the vendor, that the sale would be subject to the capital gains tax on $100,000 formed part of the consideration for the sale and that the defendants, relying upon his representations, should not be held liable for a tax on a greater amount." It also showed that Sears had agreed to report his gain on the basis of an instalment sale, which would have the effect of spreading his capital gains tax over a period of years.

The judge also pointed out that Sears and his wife had ac-

quired the major portion of the property (795 acres) in 1925, that during "the long period that Mr. Sears owned the property, the amount expended in capital improvements and the proof of expenditures was within his personal knowledge," and further that "[h]ad he cooperated with the defendants in preparing his tax return during his lifetime"—Halibut having sought more than once to get him to furnish data to an accountant so that the return could be prepared and filed—"and had he not displayed an utter indifference for the Internal Revenue Laws of the U. S. by failing to file any return, he may have been able to substantiate his claim that $100,000 was the capital gains on the sale."

The trial court, in construing the clause of the contract here in controversy was "of the opinion that when the vendor died, income taxes ceased after his death and that the only capital gains tax due was on the $50,000 paid on the purchase price during the lifetime of the vendor." The figure of $2,095.12 was arrived at on the basis of the vendee's obligation being limited to a total capital gain to the vendor of $100,000.

The appellant objected to the admission of the testimony above referred to on two grounds, both of which he presses here. The first ground is limited to the testimony of the officers, directors and stockholders of Halibut and is founded upon Code (1957), Art. 35, § 3, commonly known as the Dead Man's Statute. These witnesses were not parties to the suit, and under the statute the fact that they are officers, directors or stockholders of a corporation which is a party does not bar them from testifying in a suit between the corporation and the decedent's executor and legatee as to transactions with the plaintiff's decedent; *Guernsey v. Loyola Federal Savings and Loan Assn.*, 226 Md. 77, 172 A. 2d 506; *Downes v. Md. & Del. R. R. Co.*, 37 Md. 100. See also *Flach v. Gottschalk Co.*, 88 Md. 368, 377-78, 41 A. 908. Cf. *South Baltimore Co. v. Muhlbach*, 69 Md. 395, 401-02, 16 A. 117.

The second ground of objection to testimony relating to Sears' representation that his capital gain on the sale would not exceed $100,000 is the parol evidence rule, reinforced here by the integration clause of the contract and the Statute of Frauds. The rule that parol evidence is inadmissible to vary or contra-

dict the terms of a written instrument is stated in many decisions of this Court, among them *Markoff v. Kreiner,* 180 Md. 150, at 154, 23 A. 2d 19, and *Coster v. Arrow Bldg. & Loan Assn.,* 184 Md. 342, at 349, 41 A. 2d 83. These cases also state the rule (180 Md. at 157 and 184 Md. at 349) that a contract within the Statute of Frauds cannot be partly in writing and partly in parol. To state the parol evidence rule in its usual form is not, however, to apply it, and its practical application presents many problems. *Rinaudo v. Bloom,* 209 Md. 1, 9, 120 A. 2d 184.

The parol evidence rule is involved in countless cases and has been the subject of extensive comment and a good deal of criticism by legal writers. It would be idle to attempt an extensive review of the literature. Professor Corbin has made an excellent analysis and exposition of the subject in his chapter on it in Volume 3 (revised, 1960) of his work on *Contracts,* §§ 573-596. In § 573, p. 357, he states the substance of the rule in this way: "When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." He then characterizes it as "a rule that scarcely deserves to be called a rule of evidence of any kind, and a rule that is as truly applicable to written evidence as to parol evidence." Its name has distracted attention, he says, from the real issues that are involved which "may be any one or more of the following: (1) Have the parties made a contract? (2) Is that contract void or voidable because of illegality, fraud, mistake, or any other reason? (3) Did the parties assent to a particular writing as the complete and accurate 'integration' of that contract?" He next states (p. 360): "In determining these issues, or any one of them, there is no 'parol evidence rule' to be applied. On these issues, no relevant evidence, whether parol or otherwise is excluded. No written document is sufficient, standing alone, to determine any one of them * * *." See also our comments and citations of authority on first receiving and considering parol evidence in order to determine the applicability of the parol evidence rule in *Rinaudo v. Bloom, supra,*

209 Md. at 10, and the general comments on developments in the law with regard to the parol evidence rule in the preface to Professor Corbin's revised Volume 3.

As the *Rinaudo* case holds in accord with views previously expressed by Professor Corbin now embodied in § 578, *op. cit. supra*, pp. 405-407, an integration clause is not necessarily conclusive. To like effect, see the more recent case of *Fowler v. Benton*, 229 Md. 571, 583, 185 A. 2d 344.

The trial judge's opinion upheld the admissibility of the evidence now in question as not having the effect of changing or varying the written contract, but as only helping to clarify it. He did not elaborate upon his reasons for this view, nor did he refer to the integration clause or the Statute of Frauds. We might have some difficulty in following his view of the effect of this evidence with regard to the amount of Sears' profit and might regard it rather as falling within the well recognized exception to the parol evidence rule (see for example, statements in the *Markoff* and *Coster* cases above cited) which permits evidence to be given of fraud or mistake inducing the contract. Whether or not this evidence falls strictly under this exception, we think that it was admissible here on the question of whether or not equity should grant the relief sought of specific performance. *Brooks v. Towson Realty, Inc.*, 223 Md. 61, 162 A. 2d 431. In that case, Judge Hammond speaking for the Court said: "We think the proffered testimony should have been admitted, although not to aid in determining the legal existence or validity of the contracts or in varying their terms. It was proffered not only to show that what purported to be three contracts were actually one contract, but for the purpose of showing misrepresentations and lack of good faith on the part of Towson. We think it was material to show the situation and background of the parties and the subject matter of the contracts at the time they were entered into and to aid the court in determining whether the contract as to Parcel B was one which a court of equity would specifically enforce." See also the authorities cited in *Brooks* at pp. 70-71 of 223 Md. In one of these, *Perlmutter v. Bacas*, 219 Md. 406, 411-412, 149 A. 2d 23, where after stating the general rule that equity will decree specific performance almost as a matter of course if the terms

of the contract are clear and unobjectionable, we said: "[n]evertheless, the discretion of the court will be exercised to deny the relief where to grant it would be to compel the defendant to perform a contract which he did not intend to make or which he would not have entered into had its true effect been understood." Among other authorities cited in *Brooks* and in *Perlmutter* are *Somerville v. Coppage,* 101 Md. 519, 523-24, 61 A. 318; *Ginther v. Townsend,* 114 Md. 122, 128, 78 A. 908; *Kappelman v. Bowie,* 201 Md. 86, 89-90, 93 A. 2d 266; and *Glendale Corp. v. Crawford,* 207 Md. 148, 114 A. 2d 33. Even an innocent misrepresentation may bar specific performance, and so may a mistake by the vendee only. See *Diffenderffer v. Knoche,* 118 Md. 189, 84 A. 416; *Henneke v. Cooke,* 135 Md. 417, 109 A. 113; and *Kappelman v. Bowie, supra,* as to the last point.

Here the appellee has not sought to bar specific performance entirely or to disclaim all liability under the capital gains tax clause of the contract. We think that specific performance may properly be limited to that portion of the agreement which is found to be free of objection based upon misrepresentation and may properly be denied as to any greater obligation sought to be enforced which is subject to such an objection.

Our conclusion is also supported, we think, by the consideration mentioned at the end of Judge Dorsey's opinion, which was also urged in the appellee's answer, that Sears had failed in a duty to cooperate with the vendee in producing data to show the true amount of his profit subject to the capital gains tax. An obligation to cooperate by doing this may, we think, be properly inferred from the contract, even though it is not expressed. We think that a like obligation to spread the tax liability over the life of the contract by reporting the profit on the basis of an instalment sale could also be fairly inferred from the contract. Certainly, we find no inconsistency between the terms of the contract and the parol testimony to this effect, and we think that such testimony was clearly admissible to clarify its meaning.

We think it clear that Sears was under an obligation to deal in good faith with the vendee, as well as with the Government, in establishing his cost and hence his profit on the sale. He

could not honestly merely sit back and take the position that Halibut had to pay his entire capital gains tax in any event and furnish no proof as to cost. We think that he was also obligated to disclose to the vendee his cost data and the basis upon which his liability for the federal income tax on his capital gain was computed. The statutory prohibition against disclosure of federal income tax returns does not appear to apply as between the parties to a transaction such as this. It is, we think, clear that there may be implied obligations as well as express obligations under a contract. *Hendler Creamery Co. v. Lillich,* 152 Md. 190, 136 A. 631; *Foster-Porter Enterprises v. De Mare,* 198 Md. 20, 33-34, 81 A. 2d 325; *Eastern Woodworks, Inc. v. Vance,* 206 Md. 419, 112 A. 2d 231. Where cooperation is necessary to the performance of a condition or of a promise, a duty to cooperate will be implied, and the party owing such duty cannot prevail if his failure to cooperate hinders or prevents performance thereof. *Alois v. Waldman,* 219 Md. 369, 375, 149 A. 2d 406; *Griffith v. Scheungrab,* 219 Md. 27, 34, 146 A. 2d 864 (a specific performance case) ; *Livingston v. Green Properties, Inc.,* 222 Md. 354, 357, 160 A. 2d 594; *Harry's Tavern, Inc. v. Pitarra,* 224 Md. 56, 61, 166 A. 2d 908. Here it is not actually shown that Sears' failure to cooperate has caused Halibut loss, but it is at least inferable that his delay and failure to assemble his data prior to his death has resulted in the loss of essential proof. Laches may be invoked as a defense in equity where the death of a material witness or of the principal witness has occurred. *Rettaliata v. Sullivan,* 208 Md. 617, 119 A. 2d 420; *Stoewer v. Porcelain Enamel & Mfg. Co.,* 199 Md. 146, 85 A. 2d 911. Sears was both the principal witness here and the person under whom the appellant claims. We think that his delay would have resulted in prejudice to the appellee if his representation as to cost was true and was susceptible of proof by evidence which he could have furnished and if the liability of the vendee could in the absence of such proof be based upon a greater profit to the vendor than the amount which he represented to be correct. Therefore, we think laches affords an additional ground for denying specific performance as to any amount of tax which might be in excess of that due on the amount of profit represented by Sears to be correct.

The Statute of Frauds, we think, does not prevent a court of equity from refusing to grant specific performance of a contract which complies with the Statute, but is open to other objections. Such contracts were involved in cases cited above such as *Brooks v. Towson Realty, Inc., Glendale Corporation v. Crawford,* and *Kappelman v. Bowie,* in each of which specific performance was either denied absolutely or (in *Brooks*) was stated to be permissible subject to a condition.

We are unable to agree with the appellee's contention and the holding of the trial court that Halibut's obligation was limited to the tax on Sears' capital gain which became payable during his life. This contention is based upon the theory that the obligation was purely personal to Sears. It could hardly be denied, and we understand it to be conceded by the appellee's brief, that liability for the capital gains tax on this sale passed to Sears' executor and to his legatee under the United States Internal Revenue Code. The argument here presented rests on the supposed personal nature of the covenant. It is sought to be buttressed by the provision for life occupancy of the house and five adjoining acres by Sears. We think that provision of no help to the appellee's argument. If it has any effect, it would seem to be adverse to the appellee, because of its marked contrast with the tax payment provision. In the nature of things and of people, the life occupancy granted to Sears can mean only occupancy by him during his life and no right thereto could pass to his heirs, executors, or administrators and perhaps not even to his successors or assigns during the term of his life, for that clause appears to contemplate personal use and occupancy, which is a less extensive beneficial use than an ordinary life estate would have given him. We find no reason why the benefit of the tax covenant could not pass to any of the persons described in the successor clause. We agree with the appellant's contention that the evidence shows that Sears wanted to realize a net price of $250,000, and we see no reason to suppose that he felt more generously disposed towards the vendee than he felt towards the sole beneficiary of his testamentary bounty. The argument of the appellee that it was dealing on the basis of Sears' individual income tax liability we find unconvincing. In the first place, the vendee does not seem

to have had any idea what that was, and in the next place the evidence carries the distinct impression that the vendee was dealing on the basis of Sears' maximum profit being $100,000 and the maximum capital gains tax thereon being $25,000, which is what it would have been under the capital gains tax rate then prevailing (which we may add still prevails despite some intervening suggestions for change). Other provisions of the contract, including some of the five typed clauses inserted in paragraph 2 are obviously applicable to Sears' successors, such as the prepayment of principal and partial release of mortgage clause and the covenant against reducing prices once established. Incidentally, the prepayment and partial release clause incorporated in the mortgage expressly applies to the mortgagee's heirs and assigns, and would seem to be a practical construction by the parties of that clause of the contract.

The arguments that a construction of the clause extending its benefit beyond the vendor himself would proliferate the obligations of the vendee "beyond all reason" and that it would be unreasonable to suppose that the vendee would have to rely upon unknown heirs or assigns to determine the amount of its liability are not persuasive to us. (Such provisions seem to us far more reasonable than the appellee's failure to insist upon a warranty which would probably have obviated this whole litigation.) No transfers of the vendor's interest would increase the maximum amount payable by the vendee (though a change in the tax rates could), and this seems to have been the chief concern of the vendee on this point. There is nothing to suggest that either the present appellant or any other successor to Sears' interest would be less reliable than Sears with regard to his income tax returns; and any successor would be subject to the same duty to cooperate which we have found Sears to have been under. It may be that the appellant or some other successor to Sears may be in a higher income tax bracket than Sears was, but unless there should be a change in the basis or rates of the federal income tax on capital gains, the vendee's maximum exposure would not be increased beyond the amount which it contemplated.

We construe the tax clause as applying to the actual income tax of an actual successor in interest to Sears. Sears' income in

the last year of his life or in any other year prior thereto seems irrelevant to the amount of income tax payable in respect of subsequent years, by his successors in interest (his executor and legatee) during which they must assume liability for the capital gains tax on successive instalments. We therefore see no basis upon which Sears' tax bracket should apply or should be deemed to apply to his successor. Cf. *C. B. Shaffer, supra,* 29 B.T.A. 1315. On the other hand, we see no reason to adopt the appellant's theory that the effect of the federal estate tax on the capital gain realized by Sears' successors in interest should be ignored simply because Sears himself does not have to pay the estate tax on his own estate. We think that the vendee's liability should be computed on the basis of the tax liability of the vendor and of his successors in interest, subject to the limitation that it shall not exceed what it would have been if Sears' capital gain on the sale price of $250,000 had not exceeded $100,000. This, we are inclined to think, would be in general accord with the method of calculation of the tax employed in the appellee's computation C submitted by its expert witness, Mr. Slowinski, except that the actual income tax liability of the appellant (or his successors) would be substituted for the theoretical liability of the late Mr. Sears. Successive amounts can, of course, be determined only in the light of actual events as they may occur. Though we have expressed our impression as to the proper method of computing the tax, we make no final determination of the proper computation of the tax, and this matter will have to be referred back to the trial court for actual decision.

It may be that upon remand the bill should be amended to seek a declaratory judgment with regard to the basis for computing future liabilities. Cf. *Turner v. Manufacturers Casualty Ins. Co.,* 206 Md. 601, 112 A. 2d 670, a suit for a declaratory judgment at law, where fixed instalments would be payable under a contract over a period of time.

In accordance with the above views the decree of the Circuit Court is affirmed insofar as the liability of Halibut, Inc. (and its transferee) for Sears' federal income tax on his capital gain growing out of the sale here involved for the year 1959 is concerned and is reversed insofar as it denies to the appellant

534

any right to recover on account of any federal income taxes on such capital gain in respect of any later year payable by him as executor or as legatee under Sears' will; and the case will be remanded for further proceedings not inconsistent with this opinion.

Portions of the decree not involved in this appeal are, of course, not affected by this reversal.

> *Decree affirmed in part and reversed in part, and case remanded for further proceedings not inconsistent with this opinion; the costs of this appeal to be paid one-third by the appellant and two-thirds by the appellee.*