596 A.2d 105

Sadye Weinstein CUTLER, et al.

v.

The SUGARMAN ORGANIZATION, LTD.

FAIRBROOK–JOHNNY CAKE ASSOCIATES
JOINT VENTURE

v.

The SUGARMAN ORGANIZATION, LTD., et al.

No. 1730, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Oct. 2, 1991.

568

Paul F. Strain (Michael H. Davis, Vicki Margolis and Venable, Baetjer and Howard, on the brief), Baltimore, for appellants, Weinstein, Cutler and Brener.

Richard C. Whiteford (Denise Y. Hansberry and Whiteford, Taylor & Preston, on the brief), Baltimore, for appellant, Fairbrook.

Paul A. Dorf (David B. Rudow, Paul N. Sameth and Adelberg, Rudow, Dorf, Hendler & Sameth, on the brief), Baltimore, for appellees.

Argued before MOYLAN, BISHOP and FISCHER, JJ.

BISHOP, Judge.

Appellee, The Sugarman Organization, Ltd., ("Sugarman") filed suit for specific performance in the Circuit Court for Baltimore County to require appellants Sadye Weinstein Cutler, David Weinstein and Edith Weinstein Brener ("Weinsteins") to convey approximately 24 acres owned by the Weinsteins to Sugarman pursuant to an August 22, 1985 Contract of Sale.

Thereafter, Fairbrook–Johnny Cake Associates Joint Venture ("Associates"), the assignee of Sugarman's contract with the Weinsteins, filed suit against The Sugarman Organization, Ltd., David Sugarman, President of The Sugarman Organization, Ltd. and the Weinsteins seeking, *inter alia*, specific performance of its contract with Sugarman, or damages if Sugarman was unable to convey the property. Associates' motion to consolidate its case with Sugarman's suit was granted.

At a hearing on open motions, The Artery Organization, Inc. ("Artery"), who entered into a contract with Associates to purchase the subdivided lots Associates was to receive from Sugarman, was ordered to join the ongoing litigation, pursuant to the Weinsteins' motion. Artery then filed a specific performance action against the Weinsteins, Sugarman and Associates. Artery entered into a settlement agreement with the Weinsteins and Associates on January 29, 1990 and, as a result, Artery's Motion for Voluntary Dismissal of its complaint was granted.

Prior to trial, Sugarman dismissed all of its damage counts, and proceeded only on the specific performance count. The Weinsteins and Associates waived their rights to a jury trial, and the case was tried without a jury before Judge Joseph Murphy.

At the conclusion of trial, the trial court found that the Weinsteins, in January 1988, knew that Sugarman had an option in his contract with Associates to repurchase a seven acre parcel of the property and could have, at that time, voided the agreement but did not do so. In addition, the trial court found that the Weinsteins, Sugarman, Associates, and Artery reached a new agreement at a settlement meeting on September 20, 1988, whereby they would close pursuant to the terms of the August 1985 contract, as modified on September 20, 1988. The trial court found that the Weinsteins, having ratified the August 1985 contract, as modified on September 20, and having agreed to go to closing on September 27, 1988, had waived their defense of fraud and could not now void the contract or prevent specific performance.

The trial court also found that Sugarman had not been forthright with respect to the seven acre parcel. Thus, the trial court granted in part and denied in part specific performance of the August 1985 contract as modified by the September agreement. Sugarman received specific performance of the contract, excluding the seven acre parcel which the Weinsteins were permitted to retain.

The trial court denied Associates' request for specific performance by Sugarman of the Associates contract, after finding that Sugarman offered Associates the opportunity to close on September 27, 1988 but Associates was not in a position to do so. The trial court found that Associates was not misled about the contract Sugarman had with the Weinsteins and that Sugarman was not in any way responsible for the failure of the parties to close on September 27, 1988.

### *Issues Presented*

Appellants Weinsteins present the following issues:

I. As a matter of law, may the fact that a party to litigation attempted to reach an out of court settlement agreement constitute a waiver of that party's defenses to a suit for specific performance?

Cross–Appellant Sugarman Organization, Ltd. asks:

II.   Did the trial court err in finding that the Weinsteins had a right, at any time, to void the August 1985 contract?

III.   Did the trial court err in finding that, although Weinsteins had a right to void the August 1985 contract, such right was lost by application of the doctrines of waiver and estoppel?

IV.   Was the trial court clearly erroneous in denying partial specific performance to Sugarman whereby the Weinsteins were permitted to retain the seven acre parcel?

Appellant Associates raises the following issues:

V.   Was the lower court clearly erroneous in denying Associates' motion for judgment and, clearly erroneous, in denying specific performance to Associates?

VI.   In the event this Court rules that Sugarman is not entitled to specific performance for the 133 lots, should judgment be entered in favor of Associates against Sugarman for $100,000?

## Statement of Facts

Appellants, Sadye Weinstein Cutler, her sister, Edith Weinstein Brener and their brother, David Weinstein ("Weinsteins") together own a 24 acre parcel of property in Baltimore County known as Winsten Estates ("Total Property"). On August 22, 1985, the Weinsteins entered into a Contract of Sale of the Total Property ("August 1985 contract") with David Sugarman, Mrs. Cutler's grandson-in-law and a licensed engineer and real estate broker, a developer and President of The Sugarman Organization, Ltd. At the time of the contract the property was undeveloped.

The August 1985 contract provided for Sugarman to subdivide the Total Property into the maximum number of residential lots allowed by the governmental authorities

under the zoning classification of DR–5.5.[1]  Sugarman was to pay the Weinsteins $3,500.00 for each recorded lot, with a minimum price of $300,000.00 for the Total Property.  The contract required that the Total Property be divided into four sections, with closing on the first section to occur by August 22, 1988.  The contract provided that Sugarman could assign his interest in the Total Property, after a record plat was filed.  If he wished to sell or transfer the Total Property prior to that time, Sugarman was required to get the consent of the Weinsteins.  In addition, the contract required that any assignment convey "all of the remaining portion of the Total Property not yet settled and conveyed" and gave the Weinsteins a "right of first refusal." [2]

Prior to signing the August 1985 contract, the Weinsteins received legal advice from William Weinstein, Mrs. Cutler's son-in-law and David Sugarman's father-in-law.  Both parties intended this to be an "arm's length" transaction.  Sugarman paid the Weinsteins the required deposit of $1,000.

After the contract was signed, Sugarman began to develop the Total Property.  He resolved wetland, sewerability, and density transfer problems, which resulted in the subdivision of the Total Property into 133 separate buildable lots, plus lot 134, a seven acre parcel that had no access, water, or sewer.[3]

---

1.  The exact number of lots was not specified because the exact acreage and number of buildable lots were not known.  The contract did not except the seven acre parcel.

2.  Prior to the sale of any lot, the Weinsteins were entitled to purchase the lot at the price offered by the other buyer.

3.  This parcel, which the parties and the court refer to as the seven acre parcel, is actually slightly more than eight acres.  It is two pieces of land legally described as Parcel Part 1 (comprised of 5.3 acres on the north side of I–70 of which part is not wetlands and may be developed) and Parcel Part II (2.89 acres on the south side of I–70 which is landlocked).

On August 1, 1987, prior to the recordation of the plat among the Land Records of Baltimore County, Sugarman entered into an "Agreement to Assign the Contract of Sale" with Associates. Sugarman did not obtain the consent of the Weinsteins to enter into the Agreement to Assign prior to its execution.

The Agreement to Assign the Contract of Sale ("Associates contract") provided that all of the rights and obligations of Sugarman under the August 1985 contract would be assigned to Associates and that Associates would assume all of Sugarman's liabilities thereunder. Associates was to pay $9,000 per residential lot, of which Associates was to pay directly to the Weinsteins $3,500 per lot, the amount owed to the Weinsteins under the August 1985 contract.

The Associates contract was for the assignment of the Total Property, however, it distinguished between the 17 acres to be developed currently, and the seven acre parcel which was not to be developed currently. At closing, Sugarman was to receive a five year option to purchase the seven acre parcel for $1,000.

The assignment was to become effective immediately prior to the closing on the Total Property under the August 1985 contract. Closing under the Associates contract was to be contemporaneous with the closing under the August 1985 contract and was required to occur within ten days after the final plat was recorded. In September 1987, Associates entered an agreement to sell its interest in the Total Property to The Artery Organization.

After the Associates contract was executed, Sugarman informed the Weinsteins of the Associates contract and, on August 3, 1987, requested they execute a waiver of the right of first refusal. At this point the relationship between the Weinsteins and Sugarman began to deteriorate. Distrust between the parties mounted when the Weinsteins learned of the contents of the Associates contract and then

sought to increase the purchase price per lot.[4] The Weinsteins insisted that Sugarman not assign the Property but rather retain it and do the building himself. Sugarman insisted he had the right to agree to assign his interest in the Total Property under the August 1985 contract.

On August 11, 1987, the Weinsteins signed a waiver of their right of first refusal for increased consideration.[5]

By January 1988 both parties had retained counsel. The Weinsteins saw a copy of the Associates contract for the first time on January 27, 1988. It was then they first learned of Sugarman's option to purchase back the seven acre parcel for $1,000. The Weinsteins insisted that they would not close unless they received more than the contract price.

On January 28, 1988, Sugarman requested the Weinsteins sign documents required for approval of the record plat. The Weinsteins refused to sign and, in March 1988, made a settlement demand for an additional $400,000. Sugarman countered with an offer of $100,000. In April 1988, the Weinsteins sent Sugarman a courtesy copy of the Complaint which the Weinsteins intended to file in April, but which was never filed.

On May 19, 1988, Sugarman filed a Complaint, seeking specific performance by the Weinsteins of the August 1985 contract. On August 9, 1988, Associates filed suit against Sugarman and the Weinsteins.[6] The two suits were consol-

---

4. At trial William Weinstein testified David Sugarman told him that David Weinstein had demanded $4500 per lot upon learning of the Associates contract. In a deposition, William Weinstein did not mention this demand when asked whether Mr. Sugarman had told him about any demands by David Weinstein with respect to executing the waiver of the right of first refusal. When asked about his conflicting testimony, William Weinstein testified that David Sugarman had told him about the demand.

5. Sugarman agreed to pay an additional amount to cover a change in federal taxes.

6. Associates sought damages from the Weinsteins for intentional interference with the Associates contract and the contract Associates had

idated and Artery was ordered to join the ongoing litigation. The Weinsteins delivered to Sugarman the executed documents needed to record the plat and the plat was recorded on September 8, 1988.

On September 20, 1988, the Weinsteins, Sugarman, Associates, and Artery met in Associates' office and reached an oral agreement. The agreement provided that closing would be held on September 27; funds would be wired, presumably by Artery, to an escrow account so distribution could be made immediately to all the interested parties; the August 1985 contract would be the basis for the closing; the entire Total Property would be transferred to the Sugarman Organization, for consideration stated in the August 1985 contract plus an additional $250,000 from Associates; [7] the seven acre parcel would go to the Sugarman Organization with an option executed at closing giving Associates and the Weinsteins an option to purchase the seven acre parcel for $150,000; and the remaining 17 acres would go to Artery.

On September 27, 1988, the closing did not occur because Artery refused to close. As a result, the Weinsteins refused to tender the deed and Associates refused to close.

As previously mentioned, Artery executed a settlement agreement with the Weinsteins and Associates and its complaint was dismissed.

We review the trial court's findings under the clearly erroneous standard. Md. Rule 8–131 (1991). *Clayten v. Proutt*, 227 Md. 198, 202, 175 A.2d 757 (1961); *Fran Realty, Inc. v. Thomas*, 30 Md.App. 362, 371, 354 A.2d 196 (1975).

This standard requires that we decide only whether there is any competent, material evidence legally sufficient to

with Artery, and specific performance of the Associates contract by Sugarman.

7. The transcript of the September 20th meeting reveals that Sugarman was aware that additional consideration was to be provided to the Weinsteins by Associates, but he did not know the amount.

support the trial judge's findings. In making this determination, we assume the truth of all the evidence and of all the favorable inferences fairly deducible therefrom tending to support the trial court's factual conclusions. *Maxima Corp. v. Cystic Fibrosis Foundation*, 81 Md.App. 602, 610, 568 A.2d 1170 (1990).

## *Discussion*

### I., II. and III.

The appellants Weinsteins contend that the trial court correctly found that the appellants had a right to void their August 1985 contract when they discovered that appellee Sugarman kept an option in his contract with Associates to repurchase the seven acres for a nominal fee. Weinsteins further contend that unless they waived their right to void the August 1985 contract as a matter of law, the trial court's order of specific performance must be reversed.

■ We find sufficient evidence to support the trial court's finding that the Weinsteins had a right to rescind the August 1985 contract when they learned of the option. But we also find ample evidence to support the trial court's finding that the Weinsteins waived, as a matter of law, their right to rescind the August 1985 contract.

### Right to Rescind the August 1985 Contract

The trial court did not find that Sugarman committed a fraud against the Weinsteins by retaining an option, in his contract with Associates, to buy back the seven acre parcel for a nominal sum. Rather, the trial court found that all the parties before it were "decent people," not "thie[ves]," facing difficult problems as a result of "misunderstandings." As appellants note, it was not necessary for the trial court to find fraud in order to give the Weinsteins the right to void the contract. The Court in *Sommers v. Dukes*, 208 Md. 386, 392, 118 A.2d 660 (1955) stated that "[i]n equity ... rescission may be had for innocent [material] misrepresentations." The trial court, referring to Sugarman's fail-

ure to disclose the $1,000 option to repurchase the seven acre parcel contained in the Associates contract, found that Sugarman "should have been more forthright and open with (the Weinsteins).... He made a mistake." This finding was sufficient to support the trial court's conclusion that the Weinsteins could have voided the August 1985 contract.

### Waiver of the Right to Rescind

█ Regardless of the action giving rise to the right to rescind a contract, whether it be fraud or misrepresentation, the remedy of rescission must be exercised promptly upon discovery of the fraud or misrepresentation. *Ellerin v. Fairfax Sav. Ass'n*, 78 Md.App. 92, 552 A.2d 918 (1989). This is so because "[r]escission is considered to be a radical remedy; it therefore must be promptly asserted once a party discovers facts which justify it." *Id.* at 109, 552 A.2d 918.

█ The right to rescind may be waived by not acting promptly on discovery of the facts from which it arises. *Bagel Enter., Inc. v. Baskin & Sears*, 56 Md.App. 184, 467 A.2d 533 (1983). The right to waive must be exercised within a reasonable time, which is determined, in large part, by whether the period has been long enough to result in prejudice.[8] *Id.* at 197–98, 467 A.2d 533. Rescission requires at a minimum that the party exercising a right to rescind notify the other party and demonstrate an unconditional willingness to return to the other party both the consideration that was given and any benefits received. *Id.* at 201, 467 A.2d 533.

█ The evidence supports the trial court's finding that the Weinsteins did not promptly exercise their right to

---

8. From January 1988, when the Weinsteins first learned of the alleged misrepresentation, until September 1988, when the plat was recorded, Sugarman continued to expend resources to develop the property. The court did not explicitly refer to this fact in its disposition of the case.

rescind the August 1985 contract and therefore waived their right to seek rescission. On January 27, 1988, the Weinsteins discovered that Sugarman retained an option to purchase the seven acre parcel in the Associates contract. The trial court found that the Weinsteins did not seek to void the contract. Although the Weinsteins' attorney notified Sugarman's attorney that the Weinsteins were prepared to file a Complaint and seek a rescission, the Weinsteins never filed the Complaint. The Weinsteins did not either tender the $1,000 deposit under the August 1985 contract or offer to pay Sugarman, in *quantum meruit*, for the work he had performed to develop the property. Weinsteins' attorney testified that he knew the Weinsteins had a cause of action for rescission based on the misrepresentation but he did not file suit and seek to rescind the August 1985 contract because the Weinsteins had instructed him to settle the case for additional compensation.

In addition to sleeping on their right to rescind, the Weinsteins, in March 1988, made a settlement demand for $400,000 over the August 1985 contract price and a counteroffer to settle was made by Sugarman. On August 19, 1988, the Weinsteins executed the necessary documents and Sugarman subsequently filed the plat. The plat was accepted and recorded on September 8, 1988. This of course, added substantial value to the property. Meanwhile, by its terms the August 1985 contract expired on August 22, 1988.

### Ratification of the August 1985 Contract

The trial court found that the Weinsteins ratified the August 1985 contract, after they knew of the alleged fraud by Sugarman, when they reached an agreement at the meeting on September 20, 1988 to close pursuant to the August 1985 contract, as modified at the September 20th meeting.

In *Bagel*, this Court reasoned:

Having the knowledge of the facts, he is not deceived. If he is unwilling to take the benefits accrued or accruing under the contract, he has an opportunity to disavow it,

get back what he put out, and place himself in approximately the same position in which he would have been had no contract been made. If he does not do this, but continues receiving the benefits coming to him under the contract, he has affirmed the contract after knowing the facts. He may have been deceived in the first instance, but he is not deceived after he knows. Making his choice after he knows, he must abide by it.

*Id.* at 200, 467 A.2d 533 (citations omitted).

Even though the mere affirmation of a contract does not imply a waiver of the right to sue [9] for fraudulent misrepresentation, *Sommers*, 208 Md. at 393, 118 A.2d 660, the parties involved in this case went beyond merely affirming the August 1985 contract. A new contract was formed—a novation took place.

A novation is the substitution of a new contract or obligation for an existing one, between the same or different parties by mutual agreement. In *I.W. Berman Properties v. Porter Brothers, Inc.*, 276 Md. 1, 344 A.2d 65 (1975), the Court defined novation as

a new contractual relation made with intent to extinguish a contract already in existence. It "contains four essential requisites: (1) A previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such a new contract; and (4) the extinguishment of the old contract by the substitution of the new one."

*Id.* at 7, 344 A.2d 65 (citations omitted).

■ Once there has been a novation, with a substantial concession by the party accused of committing a fraud, and the party alleging the fraud knew of the fraud and knew he or she had a cause of action for the fraud, the novation represents an informal settlement between the parties for any fraud and implies, as a matter of law, a waiver of any

---

**9.** The Weinsteins do not seek the right to sue but rather seek the right to void their obligation under the August 1985 contract, by raising fraud as a defense to the suit against them for specific performance.

claim to fraud. *See Holder v. Maaco,* 644 F.2d 310, 312–13 (4th Cir.1981).

As of January 1988, the Weinsteins were well aware of the fact that Sugarman kept the option to purchase the seven acres from Associates. Based on the testimony of their attorney, the Weinsteins also were aware of their option to rescind the August 1985 contract at that time. Therefore, on September 20, 1988 when the Weinsteins met with Sugarman and the others, they were not operating under a deception as to the seven acres.

All parties to this case were present at the meeting on September 20, 1988. The evidence presented at trial supports a finding that the requirements for waiver were met. The Weinsteins met with Sugarman and the other parties on September 20 because they wanted to reach an agreement, rather than rescind the August 1985 contract. All of the parties to this litigation concede that the September 20th meeting took place and none of the parties dispute the accuracy of the transcript which memorialized the terms of the settlement.[10]

The record is clear that the parties reached an understanding of the terms of their new agreement, and intended to reduce them to writing and to carry them out on September 27, the agreed closing date. During the September 20th meeting each of the parties individually affirmed that a "verbal understanding" had been reached and that each was "going to document the verbal understanding." Mr. Belsky, the Weinsteins' attorney, testified: "We had terms that we had reached, an agreement between [Sugarman] and my client, subject to me being fully satisfied that the thing was going to be done and that the documents would be executed." Mr. Rudow, Sugarman's attorney stated during the meeting: "[T]his is as clear a settlement as I've ever been present. [sic] I can't think of any that have

---

**10.** Where the parties so concede there need be no signed writing to avoid the Statute of Frauds. *Trossbach v. Trossbach,* 185 Md. 47, 54–56, 42 A.2d 905 (1945).

broken up where the parties have agreed." Mr. Personette, a principal of Associates who attended the meeting, when asked if an agreement had been reached testified: "I agree that the basic fundamentals were all agreed upon at the meeting.... It had not been put into writing. The basic terms of the agreement were met.... We had a verbal agreement, yes." Mr. Eschelman, who represented the Artery Association at the meeting, testified that it was his belief that "[t]here was an agreement that had been reached among the various parties."

The Weinsteins contend there was no agreement because of the expressed contingencies to put the agreement in writing, prepare the documents and carry out the agreement. The only real contingency expressed by the parties was that the agreement actually be carried out. But this contingency, by all parties to the agreement, is not a contingency with respect to reaching the agreement. Rather it is a statement that "if you do not perform I will not perform." This is an implied condition in many contracts. There was an exchange of new promise for new promise among all the parties. The trial court was not clearly erroneous in finding that the parties reached a new and valid agreement.

The August 1985 contract became the basis of the September 20th agreement; additional consideration was to be paid to the Weinsteins—Associates was to pay $250,000 (one half of Associates' profits from Artery) and Sugarman was to grant the Weinsteins, along with Associates, an option to purchase the seven acre parcel for $150,000; the Weinsteins were to defer a portion of the money they were to receive from Sugarman in the form of a loan to Associates; mutual releases were to be executed by all the parties and the litigation dismissed; and the closing date was set for September 27, 1988.

The obligation of the Weinsteins was, in essence, no different under the August 1985 contract than under the September 20th agreement. They were to tender the Total Property to others, including the seven acres to Sugarman.

What was different under the September 20th agreement was the consideration the Weinsteins would receive in return for the conveyance. The Weinsteins, along with Associates, were to receive from Sugarman the option to purchase the seven acres for $150,000. It is conceded by the Weinsteins in their brief that Sugarman was ready, willing and able to assign the seven acre parcel. Thus, the trial court in granting specific performance of the August 1985 contract, minus the seven acres, granted specific performance in such a way as to effectuate the intent of the two parties as illustrated by them in the September 20th agreement. Under the ruling of the court, the Weinsteins conveyed the 17 acre parcel for $3,500 per lot and retained the seven acre parcel without having to share a one half interest in the land with Associates, or pay $150,000 to Sugarman. This was more than the Weinsteins were to receive from Sugarman under the September 20th agreement, even though they did not receive the $250,000 in additional consideration from Associates. Nothing prevents the Weinsteins from seeking damages from Associates and/or Artery.

Under the Court's disposition, Sugarman received the 17 acre parcel for $3,500 per lot and gave up the seven acres which Sugarman agreed to do, anyway, upon the exercise of the option by the Weinsteins. Sugarman did not, however, receive from the Weinsteins the agreed upon option purchase price of $150,000. But this disposition was not clearly erroneous given that the trial court found that Sugarman had not been forthright.

■ To find that the Weinsteins waived their right to rescind the August 1985 contract is to limit their remedy.[11] The right to raise fraud or misrepresentation as a defense in this specific performance action was waived when the Weinsteins, with knowledge of alleged fraudulent behavior

---

11. Upon discovering a fraud the party to the contract may elect either to rescind the contract promptly or ratify the contract and sue for damages. *Sommers,* 208 Md. at 393, 118 A.2d 660.

by Sugarman, agreed to go to closing on September 27 under the terms of the August 1985 contract as modified on September 20. The general rule is that equity will decree specific performance almost as a matter of course when the terms of the contract for the sale of land are clear and unobjectionable. *Whitney v. Halibut,* 235 Md. 517, 528–29, 202 A.2d 629 (1964). Although "[e]ven an innocent misrepresentation *may* bar specific performance," *id.* at 529, 202 A.2d 629 (emphasis added), if equity so requires, specific performance should not be barred where the right to rescind has been lost and the original contract has been incorporated into a new agreement. Where rescission of the contract is not an option for the party seeking to invoke it, the party cannot use that right to prevent specific performance.

In equity the court's task is to do what justice requires. Weinsteins and Associates settled with Artery prior to this case coming to trial. Because Artery was not a party to the suit the court found that it did not have jurisdiction over the real culprit responsible for the failure of the parties to close under the September 20th agreement. Without Artery it was impossible to fashion a remedy which would execute identically the requirements of the September 20th agreement. Nevertheless, the trial court aptly exercised its discretion to achieve a remedy which reflected the intention of the parties, as illustrated in the September 20th agreement, and which was also just. Based upon the evidence and the findings of the trial court, the judgment of the trial court was not clearly erroneous.

## IV.

■ Cross-appellant Sugarman contends that the trial court erred in granting only partial specific performance of the August 1985 contract which required sale of the Total Property. We disagree.

Sugarman notes that the trial court did not find that the behavior of Sugarman was outrageous or fraudulent. Sugarman therefore concludes, incorrectly, that denial of specif-

ic performance as to the seven acre parcel is precluded. The Court noted in *Brooks v. Towson Realty, Inc.*, 223 Md. 61, 162 A.2d 431 (1960):

> There can be no doubt that the court may decree specific performance conditionally.... "The decree need not be absolute in form, and the performance that it requires need not be identical with that promised in the contract; it may be so drawn as best to effectuate the purposes for which the contract was made, and it may be granted on such terms and conditions as justice requires."

*Id.* at 73, 162 A.2d 431 (quoting from *Restatement of Contracts*, § 359(2)).

In *Whitney*, 235 Md. at 529, 202 A.2d 629, the Court found that "specific performance may properly be limited to that portion of the agreement which is found to be free of objection based on misrepresentation and may properly be denied as to any greater obligation sought to be enforced which is subject to such an objection."

As we noted, "even an innocent misrepresentation may bar specific performance." *Id.* at 529, 202 A.2d 629. Although Sugarman did assign the Total Property, the retention of the option to purchase back the seven acres for a nominal price of $1,000 is enough to raise a doubt in the mind of a reasonable person as to whether the assignment of the seven acre parcel was honest and fair dealing. The trial court found that Sugarman had not acted forthrightly with respect to the seven acre parcel and had made a mistake. Based on this finding it was not clearly erroneous for the trial court to withhold specific performance with respect to the seven acres.

## V.

Appellant Associates contends that the trial court's denial of Associates' motion for judgment and specific performance of the Associates contract was clearly erroneous. We disagree and affirm the ruling of the trial court.

Associates contends that the trial court erred because it denied Associates' claim for specific performance on the

basis of a contract modification that Sugarman itself was not asserting. Again we disagree.

The trial court denied Associates' request for specific performance because Associates was not ready, willing and able to perform on September 27, 1988. Which contract Associates was unable to perform is irrelevant since the court found that they were not able to fulfill their obligations under either contract.

As the Court of Appeals noted in *Clayten v. Proutt*, 227 Md. 198, 203, 175 A.2d 757 (1961), one who seeks specific performance must be able to show that "he is ready and desirous to comply with the contract on his part, and has the ability to perform."

The obligations of Associates and Sugarman to one another were essentially the same under the Associates contract and under the September 20th agreement.[12] The only two differences were (1) that Sugarman was obligated under the September 20th agreement to give Associates and the Weinsteins an option to purchase the seven acre parcel for $150,000 and (2) the date for closing was extended from August 21, 1988 to September 27, 1988. Sugarman was still required to assign Associates all of his rights, obligations and liabilities under the August 1985 contract. Associates was still obligated to pay $9,000 per lot received, $3,500 per lot thereof to be paid directly to the Weinsteins and $5,500 to be paid to Sugarman. Under the September 20th agreement, however, Artery was to "step into the shoes" of Associates and provide the funds.

The trial court found that, on September 27, 1988, Sugarman and the Weinsteins were ready, willing and able to go

---

12. Whether the September 20th meeting resulted in a global agreement, the obligations of Associates to Sugarman under it were the same as under the original Associates' contract. This is evidenced by Associates' letter to the Weinsteins dated September 27, 1988 which Mr. Personette, an Associates' principal, testified reflected Associates' understanding of the terms of the September 20th agreement. Paragraphs 1. and 2. affirm Associates' obligations to Sugarman and the Weinsteins under the Associates contract.

to closing but Associates was not. There is ample evidence to support the trial court's findings that Associates had been offered the opportunity to close on September 27, 1988, with or without Artery, and it simply was not able. Associates own representative, Mr. Personette, testified to this. Furthermore, the evidence supports the trial court's finding that Sugarman was not responsible for Associates' failure to close. Even though the trial court found that Artery's default was at the heart of Associates' failure to close, the trial court also found that Artery's default was based upon Associates' inability to resolve the problems between the two of them.[13] In addition the trial court found that the problems were frivolous and used for delay purposes. Thus, the reason for Associates' failure to close are irrelevant to Associates' request for specific performance from Sugarman.

Associates contends that Sugarman was not in a position to close because he could not deliver the deed which the Weinsteins refused to execute at the time of closing. The Associates contract does not expressly state that Sugarman guarantees to deliver the deed. In fact, paragraph 1.4 of the contract provides that, in the event the Weinsteins are not ready, willing, and able to convey the Total Property, Associates may terminate the contract and recover its deposit. The trial court's finding that Sugarman was able to perform will not be disturbed.

Associates further contends that since time was not of the essence it should have been given a reasonable time to complete the contract.

Sugarman was under no obligation to provide more time than that to which the parties agreed at the September 20th meeting. On September 20, Associates and Sugarman agreed to close on September 27, which was nine days

---

**13.** Eschelman, a representative of Artery, testified that the major problems which prevented Artery from closing on September 27 were that Associates had not obtained the Queens Ridge easement and the absence of an executed public works agreement.

beyond the closing date required under the Associates contract.[14] There is evidence to support the trial court's finding that Associates could not relinquish all responsibility for the failed closing on September 27, since it failed to perform its obligations to Artery. In addition, the evidence supports a finding that Sugarman was anxious to close and would close under the Associates contract no later than September 27. Associates was well aware of this and the difficulties experienced by Sugarman in attempting to close, when Associates agreed to close on September 27. There were no compelling circumstances which would require the court to find that Associates was entitled to an extension beyond September 27.

## VI.

This issue is moot since we have found the trial court did not err in granting Sugarman specific performance.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANTS: ⅗ BY THE WEINSTEINS, ⅕ BY ASSOCIATES AND ⅕ BY SUGARMAN.

---

14. Associates contract provided for closing within ten days after the date of the Final Plat Recordation. The recordation took place on September 8, 1988, thus closing was required by September 18, 1988.